Hendrickson v. Commonwealth.

CASE 40—INDICTMENT—FEBRUARY 26.

## Hendrickson v. Commonwealth.

APPEAL FROM LAUREL CIRCUIT COURT.

MURDER—DEATH FROM EXPOSURE.—Where the husband uses such force and violence as to cause the wife to leave the house from fear of death or great bodily harm, and she dies from exposure, the husband is not responsible for her death unless her fear was well grounded or reasonable, and unless her death was the natural and probable consequence of leaving the house at the time and under the circumstances; and the error of the court in failing to thus qualify an instruction as to manslaughter in this case was prejudicial, the accused being a cripple in one arm, and it appearing that the deceased, his wife, was able to whip him, and had done so.

R. L. EWELL FOR APPELLANT.

The death of appllant's wife was the result of her own acts, and therefore appellant is not guilty of either murder or manslaughter.

P. W. HARDIN, ATTORNEY-GENERAL, FOR APPELLEE.

Brief not in record.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

Under an indictment for the murder of his wife, appellant was convicted of manslaughter.

From the testimony of a daughter of the de-- ceased and step-daughter of . appellant, the . only . per- son present at the time, it appears that a difficulty took place at their residence at night after they had retired to bed, in the winter of 1885-6, and, in the language of the witness, occurred as follows: "The sow rooted open the door, of the cabin, and they (her mother and father) fell out over driving her out, and he choked, beat, scratched and struck her, and she knocked him down with the iron shovel and got on him, choked him, and asked him how he felt, and he started towards his breeches and said: 'If I had my knife—I will get my knife and I'll cut your dog gon'd throat;' and that she ran out at the door and did not return that night; that he shut the door after her and propped it with a stick of wood and went to bed." She further stated that next morning she went to look for her mother and found her lying in the snow dead, and when she started appellant told her to take her mother's shoes and stockings.

The statement to the jury, made by appellant him- self, is, that the deceased commenced the fight, get- ting him down on the floor, when he choked and bit her, and she then knocked him down with an iron shovel, and got on and choked him, and then jumped up and ran out of the door, saying she would have him arrested and put in jail. He, however, admits he said to her that if he had his knife he would cut her, and started for his breeches.

Hendrickson v. Commonwealth.

From the testimony of a witness it appears that the place where the deceased lay was within about one hundred yards of his house, and about half mile of her residence, and that in going to the place where she was found she had passed by the gate of another person, and within twenty feet of his house, which was two hundred and fifty yards nearer her own residence than was the place where she died. When found she was lying on her face dead and badly frozen, the weather being extremely cold, and where she lay were signs of stirring in the snow, which was about eighteen inches deep. When she left her residence she was barefooted and had on very little clothing, and along the route she took, which led through briers, there were small quantities of blood and fragments of clothing that had been torn off by the briers ; and at another place she had struck her ankle against the end of a log and it bled freely. The witnesses testify that there were scratches on each side of her neck, and finger prints on her throat, and prints of teeth on her left arm and back of her hands, and her legs from knees down were lacerated by the briers. According to the testimony of a physician, she was eight months and one week gone in pregnancy ; but she had no wound, bruise, or other mark of violence that could have produced death. He also testified that appellant was badly crippled and paralyzed in one arm, and that on the day of his examining trial he had a considerable bruise about his face and a bad looking one about the eye.

There is evidence that the deceased was a high

tempered woman, hard to get along with. She told a witness of fighting and whipping her husband, who was a cripple, and had but one arm he could use, though the daughter testifies that in their fights he whipped her. It further appears that she had on other occasions ran off and left her husband, and at one time she came to the house of a witness and stayed all night, leaving a young baby with her husband, saying to the witness that she had got mad and run off.

The lower court refused to instruct the jury at the instance of appellant's counsel, that before finding him guilty they must believe the death of his wife was produced by him alone and in no other way; and also refused to instruct, that in order to convict they must believe he intentionally exposed her, or forced her to expose herself, to the cold under such circumstances that her death would be the probable and natural consequence of such exposure, and that she died from such exposure. But in lieu of those asked by his counsel, gave the following: "If the jury believe * * that the defendant * * in sudden heat and passion, and not in his necessary or reasonably necessary self-defense, used such force and violence towards his wife as to cause her to leave his house from fear of death or great bodily harm at his hands, and from exposure to cold her death was produced by the said act of the defendant, they should find him guilty of manslaughter," etc.

"Forcing a person to do an act which causes his death renders the death the guilty deed of him who

compelled the deceased to do the act; and it is not material whether the force be applied to the body or to the mind; but if it were the latter, it must be shown there was the apprehension of immediate violence, and well-grounded from the circumstances by which the deceased was surrounded; and it need not appear that there was no other way of escape; but it must appear that the step was taken to avoid the threatened danger, and was such as a reasonable man might take." (Russell on Crimes, 489; 3 Greenleaf on Evidence, section 142.)

In a case where the evidence was that the defendant, a husband, beat his wife and threatened to throw her out of the window and to murder her, and that by such threats she was so terrified that, through fear of his putting his threats into execution, she threw herself out of the window, and of the beating and bruises received by the fall she died, it was held that if her death was occasioned partly by the blows, and partly by the fall, yet if she was constrained by her husband's threats of further violence, and from a well-grounded apprehension of his doing such further violence as would endanger her life, he was answerable for the consequences of the fall as much as if he had thrown her out of the window himself. And in another case where the deceased, from a well-grounded apprehension of a further attack which would have endangered his life, endeavored to escape, and in so doing was fatally injured from another cause, it was held murder. (See Wharton on Homicide, section 374, where these and other cases are cited.)

The case of State v. Preslar, 3 N. C., 421, was where, after the husband had desisted from beating his wife, she went off a little distance in the yard and sat down, and the husband, after about five minutes, went into the house and laid upon the bed with his clothes on, and about half an hour afterwards she started, in company with her son, to the house of her father, about two miles off; but when she got within two hundred yards of her father's house, she said she did not wish to go there until morning, it being in the night time, and laid down on a bed quilt in the woods. Early next morning she gave notice to the inmates of the house of her presence, but was not able to walk there, and the next day died. In that case the court decided that as she had exposed herself thus without necessity, and there were, besides, circumstances showing deliberation in leaving her home, the husband could not be held responsible to the extent of forfeiting his life. But the court at the same time said that, "if to avoid the rage of a brutal husband, a wife is compelled to expose herself by wading through a swamp or jumping into a river, the husband is responsible for the consequences."

The question before us is, whether, tested by the principles stated and illustrated, the instruction quoted correctly and fully embodies the law applicable to this case.

It will be perceived that the jury were authorized, by the instruction, to convict, if they believed the accused used such force and violence as to cause the deceased to leave the house from fear of death or

great bodily harm at his hands. But they were not instructed, as they should have been before convicting, to believe, nor permitted to inquire, whether or not such fear was well grounded or reasonable. The jury might, and from their verdict doubtless did, believe she left the house from fear of death or great bodily harm, yet, if they had taken into consideration the previous conduct of the deceased, her disposition and ability to fight with her husband, their comparative physical powers, and all the circumstances proved in the case, they might not have believed her fear was well grounded or reasonable, and unless it was, the accused should not be held responsible for her death, for in such case he could not be regarded as forcing her to leave the house.

The jury should have been further instructed that, to convict, they must believe the death of the wife by freezing was the natural and probable consequence of leaving the house at the time and under the circumstances.

There is no evidence the accused prevented her reentrance into the house, as assumed in the instruction in regard to murder, and it was error to make reference thereto. For the errors indicated, the judgment is reversed for a new trial, and other proceedings consistent with this opinion.