## Sanders v. Commonwealth.

(Decided May 20, 1932.)

O. B. BERTRAM, for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Rees—Affirming.

Appellant, Roy Sanders, was indicted in the Taylor circuit court for the murder of his wife, Matre Sanders, and on the trial was convicted of manslaughter and sentenced to a term of twenty-one years in the penitentiary. On this appeal he insists that the judgment should be reversed because (1) the evidence is not sufficient to sustain the verdict of the jury, and (2) incompetent evidence prejudicial to his substantial rights was admitted over his objections.

The indictment charged that appellant murdered his wife by striking her with his hands, fists, clubs, and automobile accessories and by cutting her with his pocketknife, thereby forcing her to jump or fall from his automobile while it was being driven by him at a high rate of speed.

The tragedy happened on September 12, 1931, while appellant, his wife and their child, who was about eighteen months of age, were traveling in appellant's automobile from Campbellsville in Taylor county to Columbia in Adair county. As they passed the store and post office at Romine, Mrs. Sanders jumped or fell from the automobile. Her body rolled about twenty feet, and she died within an hour without regaining consciousness.

It is the commonwealth's theory that appellant had attacked his wife and put her in such fear of death or great bodily harm that she was forced to and did jump from the automobile, sustaining injuries resulting in her death; while it is appellant's theory that the door on the side of the automobile on which his wife was riding, and which he claims was defective, opened, causing her to fall out, and that the occurrence was purely an accident.

The only eyewitnesses besides the appellant were George Romine, who was introduced as a witness by the commonwealth, and M. F. Gore, who testified for the appellant. It appears that the store in which the post office is located is the only building at Romine. George

Romine was standing on the platform in front of the store, and saw the automobile approaching at a speed of 30 or 35 miles an hour. In relating what happened as the automobile passed the store, the witness said:

"She went right out the door and stopped on the running board and then fell to the ground. I was standing on the platform in front of John Romine's store and I saw the defendant coming in this direction from me and right as they got there in front she jumped out on the running board and when she got at this angle she jumped off."

On cross-examination he testified on this point as follows:

"Q. You don't know whether the door opened and she fell out or not? A. She didn't fall out. Q. Well, in what position did she fall? A. She swung around and got on the running board of the car and then jumped off."

M. F. Gore testified that he was standing near the store on the right-hand side of the road considering the direction in which appellant's automobile was traveling and within about 15 feet of the point where Mrs. Sanders jumped out. He saw the automobile when it was about 100 yards away. On direct examination he said:

"In ever noticed anything until she got even with the platform at the store. She opened the door and I reckon it must have been something like 15 feet above the platform she stepped right out on the running board and come out on the pike."

Appellant stopped his automobile about 100 yards down the road, and backed it to a point opposite where his wife was lying on the side of the road. George Romine and M. F. Gore assisted him in lifting her onto the front seat of the automobile. He then drove to the residence of Dr. E. B. Atkinson at Cane Valley, which is four miles from Romine. Mrs. Sanders died within a few minutes after her arrival there. Dr. Atkinson asked appellant how his wife received her injuries, and appellant said that the door of the automobile was defective, and as he rounded a curve in the road the door opened and she fell out. Dr. Atkinson's wife testified that she offered to call his wife's people, and he told her they did not have a telephone. She knew that they did

have a telephone, and called them anyway. She also asked him where his children were, and he told her that they were at the home of Allen Bennett, but later he told her they were at a Mrs. Cook's.

A number of witnesses testified that the road at Romine is straight for a distance of 70 to 100 yards on either side of the store, and there is no evidence to the contrary. Immediately after appellant's wife was placed in the car and he drove away, Mrs. John Romine found an open pocketknife in the center of the road and at the spot where appellant had just cranked his car. The knife had a broken handle. On the trial appellant denied that it belonged to him, but two or three witnesses identified it as his property. Dr. B. T. Black, the coroner of Taylor county, who held the inquest, described the cuts and bruises he found on Mrs. Sanders' body. Her skull was fractured, her jawbone broken, and she was badly cut and bruised about her head and body. He testified that all of these cuts and bruises could have been caused when she fell on the road, but that in his opinion all of them were not so caused.

Appellant was 29 years of age at the time of the trial. He and his wife had been married 12 years, and they had five children. The evidence shows that he had a jealous disposition, and had threatened on a number of occasions to kill his wife. A few weeks before her death appellant and his wife passed near the home of Mrs. Cassy Shepherd. Mrs. Sanders got out of the automobile, opened the gate, and appellant drove through the gate, but failed to stop. His wife attempted to get into the automobile while it was moving, but fell, and appellant got out and struck her. In the language of the witness:

"He stopped there and she opened the gate and he never did stop for her to get back in the car, she kept trying to step on the fender to get in, she fell on the ground and for a few minutes she didn't get up right then, then she got up and rubbed her knee and started toward our house, he stopped and he was hitting her several times and they went on to the car. After they went to the car, he was still hitting her a time or two. She says, 'Don't kill me, Roy, Honey, I love you. If you will turn me aloose I will get in the car. So he throwed her in under the steering wheel.''

It was probably on this same trip that appellant drove to the home of John Johnson. When he arrived there, he was in an angry mood, and asked his wife where his pistol was, saying he was going to kill her. When he failed to locate his pistol, he drew a knife from his pocket. Johnson took the knife out of his hand, threw it on the rear seat of the automobile, and ordered him to leave. Appellant, his wife, and their five children spent the night before the killing at the home of Mrs. Eina Cook, and on the day the killing occurred appellant said going to Lebanon to rent a house. Mrs. Cook started with appellant on this trip, and, after they had traveled a few miles, appellant began quarreling with his wife. He accused her of upholding her parents, whom he seemed to blame for his predicament, but what that predicament was does not clearly appear from the evidence, but it can be inferred that it was his inability to rent a house in the neighborhood in which he had been living. Mrs. Cook remarked in substance that Mrs. Sanders should not be criticized for defending her parents, whereupon appellant said:

"God damn it, if that is the way you feel about it you can get out of this car."

Mrs. Cook got out, and appellant drove off, leaving her on the road a considerable distance from her home. This happened a few miles from Romine, and less than an hour before Mrs. Sanders was killed.

There is evidence that the appellant on other occasions abused and threatened to kill his wife, but we deem it unnecessary to detail further this character of evidence, which was admissible for the purpose of showing appellant's state of feeling towards the deceased. While most of the evidence was circumstantial and appellant's guilt must be inferred from the facts adduced, those facts and the inferences that may reasonably be drawn therefrom fully sustain the verdict returned by the jury. Appellant had threatened to kill his wife, had struck and kicked her on a number of occasions, and had quarreled with her a short while before her death. He made no inquiry of those who were present and saw his wife fall and who assisted him in lifting her into the automobile, nor did he then offer any explanation of the occurrence which he later termed an accident. When asked by the physician how the accident happened, he said that the lock on the door of his automobile was defective,

and, while rounding a curve in the road, the door opened and his wife fell out of the car. It was shown that there is no curve in the road at that point, and the two eye-witnesses both testified positively that the deceased opened the door, stepped on the running board, and jumped. Appellant's open knife, the ownership of which he denied, was found lying on the road at the place where he cranked his car. When Mrs. Atkinson asked him if he wished her to call his wife's parents, he said, "No,". and stated that they had no telephone, which was untrue. It would be unreasonable to believe that the deceased, while the automobile in which she was riding was traveling at a rapid rate of speed, deliberately opened the door and jumped to the ground unless she had a well-grounded fear that she was about to suffer great bodily harm at the hands of her husband.

The rule is well settled that a person, who by actual assault or threat of violence causes another, acting upon reasonable fear or apprehension, to do an act resulting in injury causing his death, is responsible for the homicide. Hendrickson v. Commonwealth, 85 Ky. 281, 3 S. W. 166, 8 Ky. Law Rep. 914, 7 Am. St. Rep. 596; Adams v. People, 109 Ill. 444, 50 Am. Rep. 617; Norman v. U. S., 20 App. D. C. 494; Thornton v. State, 107 Ga. 683, 33 S. E. 673; State v. Preslar, 48 N. C. 421; 29 C. J 1079.

When appellant's state of feeling towards his wife, his conduct at the time of the tragedy and immediately before and afterward, his version of the cause of his wife's death, which is contradicted by the physical facts and by the testimony of the eyewitnesses, the finding of his knife on the road, and other minor details, are all considered together, we are compelled to conclude that there was ample evidence from which the jury might reasonably infer that the deceased, acting on a well-grounded fear that she was about to suffer great bodily injury at the hands of her husband, sustained the fatal injuries in her effort to escape.

The alleged incompetent evidence, the admission of which appellant contends was prejudicial, is that relative to assaults made upon his wife on occasions prior to her death. This evidence was admitted for the sole purpose of showing the state of feeling on the part of the accused towards the deceased, and the jury was so instructed. It was clearly admissible for that purpose. Commonwealth v. Caldwell, 223 Ky. 65, 2 S. W. (2d) 1055; Childers v. Commonwealth, 161 Ky. 440, 171 S. W.

149; Barnes v. Commonwealth, 179 Ky. 725, 201 S. W. 318; McGeorge v. Commonwealth, 145 Ky. 540, 140 S. W. 691.

We find no error prejudicial to appellant's substantial rights, and the judgment is affirmed.