### PATTERSON v. THE STATE.

No. 10687. FEBRUARY 19, 1936.

*W. E. Watkins, C. L. Redman,* and *Ernest M. Smith,* for plaintiff in error.

*M. J. Yeomans, attorney-general; Frank B. Willingham, solicitor-general, B. D. Murphy,* and *J. T. Goree,* contra.

HUTCHESON, Justice. Julian, alias Pat, Patterson was convicted of the murder of Virginia Walden. He filed a motion for new trial, which contained the general grounds and forty-four special grounds. This motion was overruled, and he excepted. The indictment was divided into five counts. Code of 1933, § 27-701. Each count charged the defendant with the murder of the same person upon the same date, and differed only as to the manner of its commission. Count 1 alleged that he did murder Virginia Walden "by causing her by his acts and conduct to jump from an automobile," the acts and conduct causing her to so jump being unknown to the grand jurors, but being alleged by them to have been of such nature as to cause Virginia Walden to jump "in her own defense," whereby she sustained injuries from which she died. Count 2 alleged that he did murder Virginia Walden, in that "he did inflict injuries, and was instrumental in the inflicting of injuries, upon the person of Virginia Walden, the exact manner of inflicting which is unknown to this grand jury," from which she died. Count 3 alleged that he did murder Virginia Walden, in that "he did drive a certain Chevrolet coupé automobile into and against the body of Virginia Walden," inflicting injuries from which she died. Count 4 alleged that he did murder Virginia Walden, in that, while in the company of Virginia Walden in a Chevrolet Coupé (same being a motor vehicle) he "did attempt to commit a violent injury upon" her person, "and did lay his hands unlawfully upon her person, and did attempt to kiss and hug and make amatory advances to her," and did drive his car upon the highway leading through Indian Springs in such a manner "and in such a direction away from Indian Springs that his conduct led her to think that he was carrying her away to some spot where he would continue his unlawful advance toward her with intent and purpose to commit an unlawful assault upon her body," thereby causing her by such conduct "in her fear and terror" to protect herself from said threatened assault by jump-

ing from said automobile, "thereby inflicting the injuries" from which she died. Count 5 alleged substantially the same facts as to the defendant causing Virginia Walden to jump from the automobile; and then alleged that, "the said Virginia Walden fleeing along said highway, the said accused then and there drove said automobile along said highway, and drove the same into and against said Virginia Walden, as a result from which jump from said automobile, and as a result of the accused driving said automobile against her body," she thereby sustained injuries from which she died.

1. When qualifying the jury on their voire dire the solicitor-general read to them from the indictment, reading only count 3. By reason of this, counsel for defendant objected to any evidence being offered in proof of the other counts of the indictment, and moved that the State be limited to trial on the third count; which motion was overruled. In the first, second, third, and fourth grounds of the motion for new trial error is assigned on the ruling which allowed the introduction of evidence in support of all the counts of the indictment, on the refusal of the court of a request to charge the jury not to consider the first, second, fourth, and fifth counts, and on the court's reading in charge to the jury all the five counts. There is no merit in these grounds. There is no law requiring the solicitor-general to read the indictment to the jury when qualifying them on their voir dire. While the indictment is in five counts, they are all subtantially the same, some of them being stated more in detail; and the count that was read to the jury contained the essential allegations. There is no contention that the indictment was defective in that it contained more than one count. No demurrer to it was filed. There is no statute in this State which prohibits the joinder of several offenses of the same class or species in different counts of the same indictment. *Davis* v. *State,* 57 *Ga.* 66; *Williams* v. *State,* 107 *Ga.* 693 (33 S. E. 641); *Webb* v. *State,* 177 *Ga.* 414 (170 S. E. 252). The solicitor-general stated that he was trying the defendant on all the counts of the indictment; and it appears that the judge read the entire indictment to the jury. In *Lascelles* v. *State,* 90 *Ga.* 347 (4) (16 S. E. 945, 35 Am. St. R. 216), it was held that several counts may be joined in an indictment charging forgery, and "at the trial the State would not, as a matter of law, be

bound to elect on which particular count or counts it would rely for conviction."

2. The judge allowed the State to introduce in evidence a photograph of the deceased, over objection that it was "irrelevant, immaterial, illustrated no issue in the case, and was prejudicial." Error is assigned on the ground that there "was no evidence as to when or where said photograph was made, nor as to how old deceased was when said photograph was made." The general objection, which from the motion for new trial appears to have been made by counsel for the defendant at the time the evidence was introduced, that it was "irrelevant, immaterial, illustrated no issue in the case, and was prejudicial," did not apprise the court of the specific objection that it had not been shown when or where the photograph was made, or how old the deceased was at the time it was taken; and the fact that these reasons are stated in the motion for new trial, is not sufficient to raise the question before this court. *Ga. R. Co.* v. *Daniel*, 135 *Ga.* 108 (2) (68 S. E. 1024); *Legg* v. *Legg*, 165 *Ga.* 314 (140 S. E. 868). The attention of the court must be called to the specific ground of objection at the time the evidence is offered, and the failure to do so will be considered as a waiver. *Andrews* v. *State*, 118 *Ga.* 1 (43 S. E. 852), and cit. The photograph was identified as a picture of the deceased, by her mother. One of the counts of the indictment alleged murder, upon the allegation that the defendant had driven his automobile upon the deceased at a certain time and a certain place, which acts caused her death. A witness for the State testified that on the night of the alleged homicide he saw a car run against and knock down a girl on the side of the road. He did not know her name, nor did he learn it. Counsel for the State exhibited to him a photograph identified as that of the deceased by her mother; and he testified that the picture was the likeness of the same girl he saw defendant with at Indian Springs on the night of the alleged homicide, they being in a car, and a likeness of the same girl he saw knocked down and injured in the road. The photograph was thus admissible for the purpose of identification.

3. The court charged the jury as follows: "And if you find from the evidence establishing the homicide that there were no facts of justification, extenuation, or mitigation, you would have

the right to imply that the killing was felonious and constitutes murder, and the burden would then be shifted to the defendant to rebut such presumption of a felonious killing by proof, or his statement, to your reasonable satisfaction that the killing was not done with malice, but under facts establishing justification, extenuation, or mitigation; and if he fails to rebut such presumption, you would be authorized to find the defendant guilty of murder." Also: "Now, gentlemen of the jury, as I stated to you, if you do not believe beyond a reasonable doubt that the State has made out its allegations of murder against this defendant, as I have already explained to you so far in the charge, but that the defendant was not justified in his acts connected with the killing or the death of the deceased, you may then consider whether or not the defendant is guilty beyond a reasonable doubt of a lower grade of homicide, to wit, involuntary manslaughter in the commission of an unlawful act; for with such doubt upon your minds you could not convict this defendant of the crime of murder." It is contended that the expressions, "and if you find from the evidence establishing the homicide," and "that the defendant was not justified in his acts connected with the killing" violated the express provision of the Code of 1933, § 81-1104, by expressing an opinion that a homicide or killing had been committed, and that this deprived the defendant of a fair trial. The State's case of course was based upon the theory of homicide. The defendant, however, denied all the allegations of the indictment, and defended on the ground that no act of his contributed to the death of the deceased. He disclaimed all connection with her death. The State did not contend, nor does the evidence warrant a finding, that any one else killed deceased. Under the law and the evidence her death could have been attributed to accident. In these circumstances it might have been better for the court to avoid the expressions just quoted, which are criticized as amounting to an expression of opinion that a "homicide" was committed; but since a new trial must be granted for other reasons, further comment upon the charge is deemed unnecessary. The judge will doubtless so qualify any such expressions on the next trial as to place them beyond the possibility of criticism.

4. Error is assigned upon the following charge of the court: "If you believe that the State has not made out its case to your

satisfaction and beyond a reasonable doubt, or that, if so, the defendant has to your reasonable satisfaction rebutted the case as made by the State, it would be your duty to find the defendant not guilty, and not convict him of any crime under this indictment." The charge is subject to the criticism that it places upon the defendant the burden of rebutting the case made by the State to the reasonable satisfaction of the jury, instead of merely the burden of raising a reasonable doubt in the minds of the jury as to the truth of the case made by the State. A defendant is required only to raise in the minds of the jury a reasonable doubt as to his guilt, even though the State has by evidence first proved its case beyond a reasonable doubt. There is no requirement that the defendant rebut the case thus made by the State to the "reasonable satisfaction of the jury." See *Blandon* v. *State*, 6 *Ga. App.* 782 (2) (65 S. E. 842). The case at bar is distinguishable from those decisions holding that a charge is not error which instructs the jury that when it is shown that the defendant killed another person, malice will be presumed, or a prima facie case of murder is made out and a presumption of murder arises, and the defendant must show to the "reasonable satisfaction of the jury" some facts of justification, mitigation, or alleviation, unless such appears from the evidence establishing the homicide, or rebuts the presumption of murder. See *Mann* v. *State*, 124 *Ga.* 760 (53 S. E. 324, 4 L. R. A. (N. S.) 934) ; *Turner* v. *State*, 139 *Ga.* 593 (3) (77 S. E. 828) ; *Lively* v. *State*, 178 *Ga.* 693 (173 S. E. 836). The charge here, in effect, placed the burden upon the defendant to rebut the case made by the State, whereas the decisions in the cases cited above and in similar cases require that the defendant rebut a presumption of malice by making out to the reasonable satisfaction of the jury circumstances of justification, mitigation, or alleviation, unless they appear from the evidence produced against him, or to rebut a presumption of murder arising out of proof of a prima facie case of murder. The State may by evidence first prove its case to the satisfaction of the jury and beyond a reasonable doubt; yet the defendant may raise a reasonable doubt in the minds of the jury, not by rebutting the case made by the State, but by proving additional facts which would show circumstances of justification, mitigation, or alleviation, thereby rebutting the presumption of malice or of murder. The charge

here placed the burden on the defendant to rebut the evidence produced by the State, in proof of the homicide, to the reasonable satisfaction of the jury; whereas he is only required to create in the minds of the jury a reasonable doubt as to the truth of the charge against him.

5. The judge charged the jury as follows; "The only element of manslaughter which is involved in this case is that of involuntary manslaughter in the commission of an unlawful act," and refused a request to charge as follows: "Involuntary manslaughter in the commission or performance of a lawful act, where there has not been observed necessary discretion or caution, shall be punished as for a misdemeanor." There was evidence in the case from which the jury could have found that the acts of the defendant were lawful, but not under the circumstances done with due caution and circumspection, which warranted the requested instruction; and the charge given eliminated this phase of the case from the consideration of the jury, and amounted to an expression of an opinion that the acts of the defendant were unlawful. The court therefore erred in giving the charge complained of, and in refusing to charge as requested.

6. The judge gave the following charge: "I charge you, gentlemen of the jury, if you believe beyond a reasonable doubt that the defendant, while he and Virginia Walden were riding together in a Chevrolet automobile on the road described in the indictment, without her permission or consent he did attempt to commit a violent injury on her person by laying his hands upon her, and did attempt to hug and kiss and make amatory advances to her, and by the manner of his driving the automobile caused her to fear that he was intending to continue his unlawful and lustful advances toward her with the intent to commit a criminal assault upon her body, he thereby caused her to fear for her safety and to jump from the automobile, and that such actions upon the part of the defendant were unlawful and in their consequence naturally tended to cause the deceased to so jump from the automobile, and in so doing she fell from the roadway and received the injuries from which she died, such offense on the part of the defendant is deemed murder, and you should so find by your verdict." Error is assigned on various grounds. To find the defendant guilty of murder in causing the death of the deceased by reason of her

jumping from the automobile in which she and the defendant were riding, it must be determined first that a homicide was committed by the defendant. Homicide does not necessarily denote a crime. It would seem therefore that we are only concerned with the question whether the act of the deceasd in jumping from the automobile was the act of the defendant. As a general proposition of law, all acts which, according to all natural laws, would probably be and are proximately caused by an act performed by another person are considered the acts of the perpetrator of the original act. However, if the resulting act or acts result in injury or damage, no legal responsibility attaches unless the original act was wrongful or negligent. In the absence of this wrongful or negligent element in the original act, the resulting injury or damage is considered accidental. Therefore the act of the deceased in jumping from the automobile must have been the probable and proximate result of some act of the defendant, before criminal responsibility attaches to him for her death. For the defendant to be guilty of murder it must appear that the act of the deceased was (1) in avoidance of a violent bodily injury, or in apprehension of immediate violent bodily injury; (2) if in apprehension of immediate bodily injury, it must have been well grounded; (3) the steps of avoidance must be such as a reasonably prudent person might take under the circumstances; and (4) the result must have been the natural and probable consequence of the improper conduct. See State v. Shelledy, 8 Iowa, 477; Hendrickson v. Commonwealth, 85 Ky. 281 (3 S. W. 166, 7 Am. St. R. 596); Adams v. People, 109 Ill. 444 (50 Am. R. 617); Norman v. United States, 20 App. D. C. 494; Rex v. Hickman, 172 Eng. Rep. 917; *Thornton* v. *State,* 107 *Ga.* 683 (5) (33 S. E. 673).

"A man may throw himself into a river under such circumstances as render it not a voluntary act, by reason of force applied either to the body or the mind. It becomes then the guilty act of him who compelled the deceased to take the step. But the apprehension must be of immediate violence, and well grounded, from the circumstances by which the deceased was surrounded; not that you must be satisfied that there was no other way of escape, but that it was such a step as a reasonable man might take." Regina v. Pitts, 174 Eng. Rep. 509. The act of the deceased in jumping from the car being in its nature voluntary, the above test must

be applied before the defendant can be found guilty of murder. In order for an act committed by one which subjects himself to bodily injury to be the act of a reasonably prudent person in avoiding the acts of another, it must have been either in avoidance of acts of another which would have occasioned bodily injury, or in reasonable apprehension of immediate bodily injury. No person can be said to have acted as a reasonably prudent person if he subject himself to serious bodily injury merely to avoid acts of another, not calculated to nor reasonably feared to affect life. The deceased, in so far as the evidence discloses, was a normal, sane person. She was fifteen years of age at the time of her death. Whether she acted as a reasonably prudent person, and whether her fears were reasonable, were questions for the jury to determine. If the act of jumping which resulted in her death was not based upon reasonable grounds of fear, the defendant could not be held guilty of murder. Where one person by his unlawful acts causes another to have reasonable fear that some injury is about to be done him by the first one, and by reason of such fear the other does some act to avoid the injury apprehended, which act of avoidance is the act of a reasonably prudent person, it follows that the person whose acts originally caused the fear and the act of avoidance as a result of the fear must have anticipated those results of his acts. Under these circumstances the act of avoidance is deemed the guilty or unlawful act of the first party. Bearing this in mind, we may lay down the following rules as to murder and manslaughter, under the indictment and the evidence in the case before us:

(1) Where one commits an assault upon another, which assault is not punishable by death or confinement in the penitentiary, and the other because of said assault reasonably fears or reasonably apprehends that a felonious assault is about to be committed upon his person, and to avoid such assault does that which a reasonably prudent person would have done under the circumstances, and such act of avoidance results in his death; if the act of avoidance is one which in its consequences naturally tends to destroy the life of a human being, the offense is murder; if the act of avoidance is one which in its consequences does not naturally tend to destroy the life of a human being, the offense is involuntary manslaughter in the commission of an unlawful act.

(2) Where one commits a felonious assault upon another (an offense either punishable by death or confinement in the penitentiary), and the act of the other in avoidance of such felonious assault results in his death, the offense is murder, whether or not the act of avoidance was that of a reasonably prudent person under the circumstances. The charge complained of is apparently based upon the theory of murder in the commission of an unlawful act not punishable by death or confinement in the penitentiary; and the rule of law laid down under division (1) above must be applied to determine the correctness of the charge. The charge was erroneous in that it permitted the jury to find the defendant guilty of murder without requiring a finding (a) that the deceased's fear of a felonious assault was a reasonable fear, or (b) that her act in jumping was an act of a reasonably prudent person under the circumstances, or (c) that her act in jumping was one which in its consequences naturally tended to destroy the life of a human being. We do not think that portion of the charge which required the jury to find that the acts of the defendant "in their consequences naturally tended to cause the deceased to so jump from the automobile" was equivalent to requiring a finding that the deceased's fears were reasonable. If that portion of the charge had required the jury to find that the acts of the defendant "in their consequences naturally tended to cause the deceased to fear that a felonious assault was about to be committed upon her person," it might then be subject to such construction; but as it reads, and when taken in connection with the charge as a whole, we are of the opinion that it is not a correct charge as to reasonable fear. The charge was also erroneous, as alleged, on the following additional grounds: It made the defendant guilty of murder if the natural tendency of his acts caused the deceased merely to jump from the automobile; and did not require, as an element of the offense of murder, that the natural tendency of his acts was to produce death; it made death a natural and necessary consequence of jumping from the automobile, and was thus an expression of an opinion that the defendant's acts naturally tended to produce death.

7. The charge, "In respect to involuntary manslaughter, . . if you believe beyond a reasonable doubt that the defendant committed an assault upon the deceased by the unlawful laying of vio-

lent hands upon her, but that such an assault in its consequences he did not intentionally cause her to do any act that naturally tended to cause her to lose her life by leaving the car, the defendant, in your opinion, may be found guilty of involuntary manslaughter in the commission of an unlawful act," is not subject to the criticism that it does not require for conviction any finding that the death of the deceased was caused by the acts of the defendant. The language, "he did not intentionally cause her to do any act," conveys the same meaning as "he did unintentionally cause her to do any act." It is, however, subject to the criticism and is error in that it expresses an opinion that the act of deceased in the leaving the car is one naturally tending to produce death. This was a question for the jury to determine.

8. The judge charged the jury: "Legal malice is that intention unlawfully to take away the life of a human being where the law neither mitigates nor justifies the killing. Malice, in so far as the allegation of murder is concerned under this indictment, is essential to be proved or established in the case to your satisfaction beyond a reasonable doubt, by the State proving that the killing occurred in some manner as alleged in the indictment, which, if such proof is not rebutted by the defendant's statement, and it does not appear to have been rebutted by other evidence in the case, either produced by the defendant or the State, the presumption of malice would remain; otherwise it would not, and it would be necessary for the State to establish the proof of malice beyond a reasonable doubt before there would be a conviction under this indictment." The court by the expression, "and it does not appear to have been rebutted by other evidence in the case, either produced by the defendant or the State" expressed an opinion that the presumption of malice arising from a killing had not been rebutted by evidence produced by the defendant or the State. Had the word "if" been used after the word "and" and before the words "it does not appear" in the charge, it would not have amounted to an expression of opinion. While we are cognizant of the rule that a mere lack of verbal precision or a slip of the tongue which could not have misled the jury is not cause for a new trial, we are of the opinion that the charge as given here was misleading, and that if taken literally, as it might have been, it invaded the province of the jury, and was prejudicial.

9. The charge, "If you believe beyond a reasonable doubt" that "the defendant, while under the influence of intoxicating liquors, negligently drove the car against her body, causing her to fall to the ground or highway and to sustain the injuries from which she died, and that such act on her part was due to the unlawful conduct of the defendant and her death was the natural consequence of his unlawful acts, such offense on the part of the defendant is deemed murder, and you should so find by your verdict," was not sufficient to include the essential elements of the crime of murder, and was therefore erroneous. A mere negligent killing, without more, may not amount to murder. Code of 1933, §§ 26-1006, 26-1009. If the negligent act is unlawful, and one which in its consequences naturally tends to destroy the life of a human being, or is committed in the prosecution of a riotous intent, or is a crime punishable by death or confinement in the penitentiary, then the killing resulting from such negligent act is murder. For an involuntary killing to be murder it must be in the commission of an unlawful act, as set out in the Code just cited. Driving a car while under the influence of intoxicating liquors is unlawful, but is not punishable by death or confinement in the penitentiary. Therefore, in order for the defendant to be guilty of murder by driving his car negligently against the deceased under the conditions as set forth in the charge complained of, it is necessary for the jury to find that the defendant's act in so driving his car is one which in its consequences naturally tends to destroy the life of a human being. This charge was also erroneous because it assumed that the fears of the deceased were reasonable. See division 6 above.

10. Error is assigned on the failure of the court to charge the jury on the law of misadventure and accident as a defense in criminal cases. As this was one of the main theories of the defense, and was involved by the evidence, it was error to omit to charge the law relative thereto, with or without a request. *Conoly* v. *State,* 10 *Ga. App.* 822 (74 S. E. 285).

11. The assignments of error not specifically dealt with are without merit, or are not likely to occur on another trial, in view of the rulings heretofore made.

*Judgment reversed. All the Justices concur.*

BECK, P. J., and ATKINSON, J., concur in the result.