THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* HERMAN GOODMAN, Defendant.

Supreme Court, Special Term, Sullivan County, November 6, 1943.

*Joseph Heller* for defendant.

*William Deckelman, District Attorney,* for plaintiff.

BERGAN, J. Defendant has been indicted by the Grand Jury of Sullivan County for manslaughter, first degree. Having inspected the minutes, he moves for a dismissal of the indictment upon the ground that the proof before the Grand Jury is insufficient to sustain the charge.

The proof upon which the indictment is founded is that on October 2, 1943, about noon, the defendant was driving an automobile on route 17, a main highway, easterly between Livingston Manor and Liberty. Anna Husch, a girl eighteen years old, was walking along the highway in the same direction. Defendant stopped his car and asked the girl if she wanted a ride. She said she was going only a short distance, but defendant persuaded her to get in the car.

The car was started, and almost immediately thereafter, when it had reached a rate of speed of about twenty-five miles an hour, defendant said to the girl that he would pay her one dollar to have sexual intercourse. She immediately opened the door of the car, hesitated a moment on the running board, and jumped. Her skull was fractured in the fall and she died. The proof of the occurrences prior to the opening of the door of the car rests upon admissions of defendant. The opening of the door, the momentary hesitation, and the jump from the car were independently established by the testimony of a witness in a car following that of defendant. The defendant did not stop his car, but continued on and drove home. Defendant is a man about twenty-eight years old and is apparently one of limited intelligence. There was no proof before the Jury that he made any physical move toward the deceased or did anything except to make the proposal which has been described.

Upon these facts, I think, a jury could find felonious homicide. The proposal made to the deceased was itself a felony. Any person who shall induce or entice any woman or girl for the purpose of prostitution " or for any other immoral purpose " or attempt to do so, " shall be deemed guilty of a felony." (Penal Law, § 2460, subd. 3.) The proposal established before the jury was therefore at least an attempt, within the statute, and was felonious. From the close proximation in time between the invitation to the girl to get in the car and the crime, a jury might find the entire course of events was in furtherance of the crime, and upon this question could consider defendant's failure to stop his car after the deceased had jumped from it.

Where one person, by the felonious or wrongful act of another, has reasonable ground to believe himself in danger, his act in escaping that danger and a consequent injury or death are deemed to arise from the original wrongful act. And I do not perceive the difference in principle in the rule to be applied between the apprehension of danger from assault by a burglar who breaks into a house at night, or the apprehension of one who believes his life in danger at the hands of another bent on doing him injury, and the reasonable fear by a young girl of attack or assault at the hands of one who suddenly and feloniously proposes an act of prostitution. The difference is not one of degree, but of factual detail, and a jury could find from these facts that she acted reasonably for her own safety under the force of substantial apprehension of immediate danger suggested by an outrageous proposal. Thus, under general principles of law, the death is to be deemed the natural consequence of the wrongful act, if a jury so find.

The bullet or the blow are not the sole means of homicide. It is not always to be dependent upon direct physical force or even upon an agency such as poison. "Murder may be committed without any stroke" and is not confined to "any particular circumstances or manner of killing." (*Rex* v. *Huggins*, 2 Ld. Raym. 1574.) "There was no offense known to our law so various in its circumstances and so various in the considerations applicable to it as manslaughter." (*Regina* v. *Towers*, 12 Cox Cr. Ca. 530.)

An arbitrary line had to be drawn somewhere to retain direct causation and the line that was attempted to be established was that in the absence of some physical force mere fear that produced death was not felonious homicide. And this rule has had almost uniform acceptance. The conclusion is drawn by Corpus Juris (29 C. J., Homicide, 1080) that "it is generally held that the law does not take cognizance of homicide where it is claimed that death was the result of grief or fear caused by accused, where there was no physical or corporeal injury," but that there is "some authority * * * to the contrary."

The exceptions to this rule provide some striking examples of judicial improvisations to obtain consistency and at the same time to hold the offender to answer for the death. In *Regina* v. *Towers* (*supra*) a mother was holding her child, four months of age, in her arms when she was assaulted. The child was not assaulted, but the mother's screams so alarmed the child that it died shortly after of convulsions. The court invented a species of unity of person between mother and child and

charged the jury that if they found that the " act, in their judgment, caused the death of the child, i. e. that the child would not have died but for the assault, they might find the prisoner guilty of manslaughter."

And where one had been threatened with an assault which was prevented by others and died of a physical cause produced by fright and excitement, the court treated the assault as constructively accomplished and conceived the changes in the body produced by the excitement as the physical product of the constructive assault so as to create by construction the blow and its physical effect. (*Regina* v. *Dugal*, 4 Quebec L. R. 350, 360.)

In New York it has been said that death from fright, " superinduced by * * * violence " is felonious homicide. (*Cox* v. *The People*, 80 N. Y. 500, 516.) And it is quite generally the rule that homicide results from the combined effect of physical injury and fright occasioned by an unlawful act. (29 C. J., Homicide, 1080.)

The present case rests, however, upon a quite distinct rule. That one who, by unlawful means, creates a well-grounded fear of danger in another, prompting an attempt at self-protective escape resulting in injury or death is criminally answerable for such a consequence, is almost universally recognized. A good statement of the rule was given by ERSKINE, J., in his instructions to the jury in *Regina* v. *Pitts* (1 Car. & Mar. 284). There the indictment charged murder. The deceased had slipped or fallen into a river attempting to escape defendant. There was some evidence of violence on the body; but death was caused by drowning. The court said: " A man may throw himself into a river under such circumstances as to render it not a voluntary act; by reason of force, applied either to the body or the mind. It becomes then the guilty act of him who compelled the deceased to take the step. But the apprehension must be of immediate violence, and well grounded, from the circumstances by which the deceased was surrounded; not that you must be satisfied that there was *no* other way of escape, but that it was such a step as a reasonable man might take."

The Supreme Court of Iowa followed this statement of the rule literally in *The State of Iowa* v. *Shelledy* (8 Iowa 477, 507). There the deceased was being carried in a carriage by the defendant and others, bound and under force and in fear of his life from threats, and escaping from the carriage fell into a river and was drowned. In *Hendrickson* v. *Commonwealth* (85 Ky. 281) the Court of Appeals of Kentucky held that where a wife, fleeing her home from fear of violence of her husband,

died of exposure, the jury might find the husband guilty of man-slaughter. The court said: " It is not material whether the force be applied to the body or to the mind; but, if it were the latter, it must be shown that there was apprehension of immediate violence, and well-grounded * * * and it need not appear that there was no other way of escape ". The court regarded the main point of the jury's inquiry to be whether the fear was well-grounded and reasonable.

In *State* v. *Preslar* (3 Jones Law [48 N. C.] 421, 428) the general proposition is stated: " If, to avoid the rage of a brutal husband, a wife is compelled to expose herself, by wading through a swamp, or jumping into a river, the husband is responsible for the consequences ". In *Adams et al.* v. *The People* (109 Ill. 444) deceased was threatened with violence and without physical force was caused to jump from a moving train and was killed. It was held that it was not essential that death should have been the probable and reasonable result of the act. " It is sufficient that death or great bodily harm was the natural result."

Where a husband assaulted his wife and she, in attempting to escape, fell or was knocked into a ditch, death being caused by the fall and not the blows, it was held to be murder. The court instructed the jury that if the defendant made a felonious attack on the deceased, and in an effort to escape she fell into a ditch and broke her neck " still, if the felonious attack was the primary cause of her death, defendant would still be guilty." The charge was approved by the Supreme Court of Georgia. (*Thornton* v. *The State,* 107 Ga. 683.) Quite similar in factual pattern was *Rex* v. *Hayward* (21 Cox Cr. Ca. 692) where, under threat of violence a wife escaping her husband fell and was found dead, a conviction for manslaughter could be sustained where the fall or fright in combination could be the cause of her death. In *Rex* v. *Hickman* (5 Carr. & P. 151) defendant struck deceased, who was on horseback, with a small stick. Deceased rode away. Defendant followed him. Deceased spurred his horse which fell, threw him and he was killed. A verdict of manslaughter was sustained.

Somewhat similar to the facts in this case were those considered in 1915 by the Court of Kings Bench of Quebec on appeal in *Rex* v. *Valade* (26 Can. Cr. Ca. 233). Defendant took a girl under age of consent to a secluded apartment and had sexual intercourse. She apparently went freely to the apartment. Afterward she jumped out of the window to get away from him and was killed by the fall. Lacking legal

consent, the court felt she was in the apartment "by constructive force" and since defendant had charge of her by such constructive force he was responsible for her act of escaping. TRENHOLME, J., remarked (p. 234): "If he threw her out at the window, or drove her by fright to jump out of the window, it would have been murder."

See, generally, upon the question: *Rex* v. *Evans* (1 Russell on Crimes and Misdemeanors [3d Amer. ed.], p. 391 [\*425]); *U. S.* v. *Freeman* (25 Fed. Cas. No. 15,162) where Mr. Justice STORY discussed the point that physical force is not necessary to constitute homicide; and *U. S.* v. *Warner* (28 Fed. Cas. No. 16,643).

A jury might say that deceased was placed in substantial apprehension of danger by defendant's criminal act in the circumstances then surrounding her. Her apprehension would necessarily be examined from her viewpoint at the time and considered in the light of her action. The jury, therefore, could find that her escape was induced by the wrong and that defendant is responsible for its consequences. The facts may possibly fall within a higher degree of felonious homicide than that charged in the indictment, but with this, I suppose, the defendant cannot complain.

Motion denied. Submit order.