183 N.J. Super. 273 (1981)
443 A.2d 1076
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DANIEL KEITH SELBY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 20, 1981.
Decided December 2, 1981.
*275 Before Judges BOTTER, ANTELL and FURMAN.
Donald T. Thelander, Assistant Deputy Public Defender, argued the cause for the appellant (Stanley C. Van Ness, Public Defender, attorney).
Frederick S. Cohen, Deputy Attorney General, argued the cause for the respondent (James R. Zazzali, Attorney General, attorney; John J. Degnan, former Attorney General).
The opinion of the court was delivered by FURMAN, J.A.D.
Defendant was convicted of first degree murder, in violation of N.J.S.A. 2A:113-1 and 2, of kidnapping, in violation of N.J.S.A. 2A:118-1, and of abduction, in violation of N.J.S.A. 2A:86-2, following a jury trial. The victim of these crimes was Kathleen Kinsman. Defendant was acquitted by the jury of assault with intent to rape Kathleen Kinsman and of kidnapping Kristen Herreshoff.
*276 On appeal he charges error in the trial judge's refusal to submit the issues of second degree murder and manslaughter to the jury, arguing that there was a rational basis in the record to support a conviction of either or both of these two lesser offenses. He also charges error in the trial judge's refusal to instruct the jury on the legal effect of voluntary intoxication and the judge's failure sua sponte to merge the kidnapping and abduction convictions.
Defendant and Kristen Herreshoff testified to the events of the early morning hours of August 18, 1977, leading up to Kathleen Kinsman's death in jumping from a moving car driven by Clark Smith. A statement by Clark Smith, who was not available at the time of the trial, was read into evidence.
Defendant, then in his twenties, was driving his car in Pennsylvania accompanied by Clark Smith, then aged 16, as passenger. They had been smoking marijuana. Defendant was affected "a little." Kathleen Kinsman and Kristen Herreshoff, then aged 19 and 18, respectively, were hitchhiking back to their homes in Mount Holly, New Jersey, after attending a concert in Philadelphia. At about one in the morning, in Trevose, Pennsylvania, defendant stopped and offered a ride to the two young women, who asked to be taken to Mount Holly. Defendant agreed. The young women entered the back seat. Before crossing the Burlington-Bristol Bridge into New Jersey, Smith lit up a pipe with marijuana and passed it around. Kinsman refused. The other three smoked for about ten minutes. According to defendant, he was "high" and feeling "pretty good." Defendant proposed that the young women accompany him and Smith to Cape May, New Jersey. Kinsman at first expressed willingness. But when the car reached what would have been the turn-off to Mount Holly, both young women asked to be let out. Kinsman told defendant and Smith that she was scheduled to take a motor vehicle driver's test the next day. She repeated her plea to be let out several times. Defendant continued driving in a southerly and then easterly direction away from the Mount Holly turn-off towards the New Jersey shore. On the *277 Atlantic City Expressway, with the car moving, defendant directed Smith to take over the steering wheel and climbed into the back seat. Herreshoff then climbed into the passenger seat alongside Smith, who had assumed the driving. Smith maintained a speed of about 45 miles an hour.
According to Herreshoff, defendant, prior to climbing into the back seat, had threatened to shoot the young women unless they consented to sexual relations, but he was not holding a gun in view. Defendant testified that Smith said, "What if we had a gun?" and that he himself repeated that query, intending it facetiously.
According to Smith's statement which was read into evidence, defendant said to Kinsman, but not seriously, "I guess we will have to torture you and drink your blood."
Herreshoff's version of events after defendant joined Kinsman in the back seat diverges from defendant's version. Herreshoff heard terrified screaming by Kinsman, which went on and on and "seemed like forever." She heard struggling and a "commotion." The screaming stopped. Defendant called out. Herreshoff looked back. The door on Kinsman's side was open. She had jumped out while the car was travelling at about 45 miles an hour and was killed when she struck the pavement.
Defendant testified that Herreshoff seemed to acquiesce in a trip to the New Jersey shore but that Kinsman protested several more times, referring to her driver's test the next day. He offered to drive Kinsman back from Cape May the following morning. He was still "high" from the marijuana and confident that he would have sexual relations. He put his arm around Kinsman. She said, "Leave me alone." He put his hand on her leg and again she asked him to stop. He offered her money for sexual relations. She refused. He leaned forward to speak to Smith. He heard the door open. He looked back and saw Kinsman's body lying in the roadway. He was shocked because Kinsman had not even seemed scared. Frightened himself and concerned about his prior criminal record, he ordered Herreshoff out of the car and drove off.
*278 N.J.S.A. 2A:113-1 et seq., repealed effective September 1, 1979, governed the prosecution of defendant for murder of Kathleen Kinsman. Under N.J.S.A. 2A:113-2, murder committed in perpetrating or attempting to perpetrate arson, burglary, kidnapping, rape, robbery or sodomy was first degree murder, as was any willful, deliberate and premeditated killing. Defendant was prosecuted for felony murder in perpetrating a kidnapping and in attempting to perpetrate rape.
Any other killing with intent to kill or to inflict grievous bodily harm was second degree murder under New Jersey Revised Statutes, Title 2A. State v. Madden, 61 N.J. 377, 385 (1972); State v. Gardner, 51 N.J. 444, 456-459 (1968). The element of malice, express or implied, differentiated murder from manslaughter. State v. Christener, 71 N.J. 55, 64-65 (1976). Manslaughter was proscribed but not defined in N.J.S.A. 2A:113-5. Under the decisional law, manslaughter was recognized to be a killing in the heat of passion, resulting from reasonable provocation, or as the involuntary consequence of an unlawful act, with intent to inflict less than grievous bodily harm or in reckless disregard of the life or safety of another. State v. Madden, supra; State v. Bonano, 59 N.J. 515, 523 (1971); State v. Brown, 22 N.J. 405, 411 (1956).
Under the governing provisions of Title 2A, a criminal homicide committed in perpetrating an abduction, which is not one of the felonies specified in N.J.S.A. 2A:113-2, would not have been first degree murder. Nor would a criminal homicide have been first degree murder if committed in perpetrating one of several lesser offenses of which defendant may have been guilty under the proofs, for example, simple assault in touching and attempting to fondle Kathleen Kinsman against her will, a threat to kill or torture her, or unlawful solicitation of her sexual favors by an offer of money, but without intent to kill or to inflict grievous bodily harm.
A preliminary question to resolve is whether, under the proofs that Kathleen Kinsman jumped to her death and was not pushed *279 or otherwise physically pressured, her death may be chargeable against defendant as murder or manslaughter in any degree. The trial judge instructed the jury:
In order for an act committed by one which subjects herself to bodily injury to be the act of a reasonably prudent person in avoiding the acts of another, it must have been either in avoidance of acts of another which would have occasioned bodily injury or in reasonable apprehension of immediate bodily injury or assault with intent to commit rape.
No person can be said to have acted as a reasonably prudent person if she subjects herself to serious bodily injury or death merely to avoid acts of another, unless the acts were intended to affect life or constitute an assault with intent to rape.
You must find that the defendant's actions and threats were such as to put a reasonably prudent person in fear of her life, serious bodily harm or an assault with intent to rape, and had impelled the deceased, acting as such a reasonably prudent person to take the steps which culminated in her death.
The test is not that you are satisfied that there was no other way of escape, but that it was such a step as a reasonable person might take under the circumstances.
This jury instruction is compatible with general law that a death in attempting to avoid a reasonably apprehended danger of grievous bodily harm is a criminal homicide committed by an accused who threatened or frightened the victim. 2 Wharton, Criminal Law (14 ed. 1979), § 117; 40 C.J.S. Homicide § 11 at 853; Annotation, "Homicide: Causing one, by threats or fright, to leap or fall to his death," 25 A.L.R.2d 1186 (1952); State v. Myers, 7 N.J. 465 (1951).
Reported decisions from other states have held that manslaughter was properly chargeable under parallel facts. Patterson v. State, 181 Ga. 698, 184 S.E. 309 (Sup.Ct. 1936) (jump from a moving car to avoid sexual advances); Sanders v. Commonwealth, 244 Ky. 77, 50 S.W.2d 37 (Ky.App. 1932) (jump from a moving car to avoid assault).
We conclude that the proofs support the conclusion by the jury, under proper instructions from the trial judge, that Kathleen Kinsman's death was the consequence of criminal homicide.
*280 We must, therefore, resolve the issue whether the trial judge committed prejudicial error in refusing defendant's request to submit the issues of second degree murder and manslaughter to the jury.
If there is a rational basis in the proofs to support a conviction of a lesser degree of criminal homicide, it is error not to submit that issue to the jury. State v. Powell, 84 N.J. 305 (1980); State v. Sinclair, 49 N.J. 525 (1967); State v. Mathis, 47 N.J. 455 (1966). As stated in Sinclair:
To force the jury to choose on the evidence in the case between first degree murder and acquittal raises the possibility that the defendants might have been convicted of first degree murder though their guilt was of a lesser degree. [49 N.J. at 543]
The evidence to support a jury instruction on a lesser degree of criminal homicide "need only be plausible," according to Powell, 84 N.J. at 322. The trial court is obligated to charge the lesser offense unless a jury verdict of guilty of such offense must rest on "sheer speculation or compromise," according to Sinclair, 49 N.J. at 540.
Where the proofs would support only a conviction of first degree felony murder or acquittal, any lesser degree of criminal homicide should not be charged as a possible verdict. State v. Davis, 50 N.J. 16 (1967) cert. den. 389 U.S. 1054, 88 S.Ct. 805, 19 L.Ed.2d 852 (1968); State v. Pacheco, 38 N.J. 120 (1962). But, under Mathis, if the fact question whether the underlying felony was committed or attempted is disputable, the issue of a lesser degree of criminal homicide should be submitted to the jury. Powell holds that the trial court committed error in not charging the issue of manslaughter, even though inconsistent with the defense, if a "different scenario" supported by the evidence provided a tenable explanation of the homicide as manslaughter and not as first degree or second degree murder.
In the appeal before us, under the proofs at trial, the fact question whether defendant was guilty of kidnapping was sharply disputed. The jury had before it only the alternatives *281 of defendant's conviction of first degree felony or his acquittal of any criminal guilt for Kathleen Kinsman's death.
It is immaterial that the jury returned a verdict of guilty of kidnapping, as well as of first degree felony murder. In Sinclair a jury conviction of first degree murder in the perpetration of an attempted robbery was upset because the trial court refused to charge second degree murder consistent with a version of the facts that the homicide occurred during a scuffle or struggle but not an attempted robbery.
If presented with the alternative of a manslaughter charge, the jury may have concluded that Kathleen Kinsman's death occurred not in the course of a kidnapping but, rather, while she was voluntarily a passenger in defendant's car in her attempt to escape from his sexual advances and solicitations backed by threats. A verdict of manslaughter would have been supported by adequate proofs in the record. We conclude that the trial judge committed reversible error in refusing a jury charge on manslaughter, to which defendant was entitled.
The judge also refused to instruct the jury that a criminal homicide in perpetrating an abduction would not be felony murder but a lesser degree of criminal homicide. The jury returned verdicts of guilty of both kidnapping and abduction.
Abduction was defined in N.J.S.A. 2A:86-2, repealed effective September 1, 1979:
Any person who takes or detains a female against her will, with intent to compel her by force, threats, persuasion, menace or duress, to marry him or to marry any other person, or to be defiled, is guilty of a high misdemeanor.
Kidnapping was defined in N.J.S.A. 2A:118-1, repealed effective September 1, 1979:
Any person who kidnaps or steals or forcibly takes away a man, woman or child, and sends or carries, or with intent to send or carry, such man, woman or child to any other point within this state, or into another state, territory or country, or forces, persuades or entices a child within the age of 14 years to leave its father, mother or guardian, or other person intrusted with its care, and secretes or conceals the child, or who procures any such act to be done, is guilty of a high misdemeanor, and shall be punished by imprisonment for life, or for such other term of not less than 30 years as the court deems proper.
*282 Kidnapping always involved a forcible taking, abduction a forcible taking or a forcible detention. Abduction had the additional element of intent to marry or to defile. The maximum sentence for kidnapping was life imprisonment, and the minimum sentence was 30 years. The maximum sentence for abduction was seven years.
In many factual circumstances the two crimes overlapped, except for the additional element of sexual intent in an abduction. Recognizing such overlapping, we suggested in State v. Johnson, 67 N.J. Super. 414, 422-423 (App.Div. 1961), that the prosecution had the right to elect under which statute it would proceed and the moral obligation to prosecute for abduction and not kidnapping "unless the crimes warrant such severe punishment." Johnson was approved in State v. Hampton, 61 N.J. 250, 275 (1972), and State v. Gibbs, 79 N.J. Super. 315, 322 (App.Div. 1963). Convictions of kidnapping were upheld on appeal in Johnson and Gibbs, notwithstanding arguments that prosecution should have been under the abduction statute, not the kidnapping statute. Under the facts in both cases the forcible taking of the victim culminated in rape or attempted rape.
On the appeal before us, no election was made between prosecution under the kidnapping statute or under the abduction statute. Proof of a forcible taking, a common element of both crimes, was before the jury. The culmination was of the utmost seriousness, the victim's death.
Nevertheless, on a version of the facts consistent with defendant's testimony and Smith's statement, and in many respects not rebutted by Herreshoff's testimony, defendant did not intend ultimately to rape Kathleen Kinsman, even if guilty of her forcible taking, but only to persuade her to engage in sexual relations with him  criminal conduct which violated the abduction statute but, arguably, did not warrant the severe punishment mandatory under the kidnapping statute.
We express the view that, upon a retrial, the State should elect between prosecuting defendant under both the kidnapping *283 and abduction statutes or under the abduction statute only, in accordance with the moral obligation set out in Johnson. In the event of an election to prosecute defendant for both kidnapping and abduction, first degree felony murder should be charged to the jury, as well as a lesser or lesser degrees of homicide in accordance with the proofs. In the event of an election to prosecute defendant for abduction only, first degree felony murder should not be charged to the jury. Whether homicide committed in perpetrating an abduction would be second degree murder or involuntary manslaughter under Title 2A might then be determined, upon the proofs, if any, of defendant's intent to inflict grievous bodily harm such as sexual assault. It is necessary to retry defendant on the kidnapping and abduction counts as well as the homicide count so that the jury has the choice of convicting on kidnapping or abduction or both (despite the coincidence of the offenses on the facts of this case), because the choice will affect the degree of homicide on which the jury may convict defendant. See State v. Ingenito, 87 N.J. 204, 212 (1981).
On the issue of the trial judge's refusal to instruct the jury on the legal effect of voluntary intoxication, we cannot conclude that prejudicial error was committed.
State v. Maik, 60 N.J. 203, 215 (1972), and State v. Stasio, 78 N.J. 467, 473 (1979), establish that the defense of voluntary intoxication is available to an accused charged with felony murder to the same extent as it is available to an accused charged with wilful, deliberate and premeditated murder. In Stasio, which relies on Maik, our Supreme Court stated:
... Second, if intoxication so impairs a defendant's mental faculties that he does not possess the wilfulness, deliberation and premeditation necessary to prove first degree murder, a homicide cannot be raised to first degree murder. State v. Sinclair, 49 N.J. 525, 544 (1967); State v. Trantino, 44 N.J. 358, 369 (1965), cert. den. 382 U.S. 993, 86 S.Ct. 573, 15 L.Ed.2d 479 (1966). Under this exception the influence of liquor "no matter how pervasive that influence may be, will not lead to an acquittal. It cannot reduce the crime below murder in the second degree, and this because of the demands of public security." State v. Maik, supra, 60 N.J. at 215. Third, a felony homicide will be reduced to second degree *284 murder when intoxication precludes formation of the underlying felonious intent. Parenthetically, it may be noted that since voluntary intoxication does not eliminate responsibility for the felony, it could be contended that the defendant should remain liable for first degree felony murder. On the other hand, considerations of fairness indicate that such a defendant should be treated the same as one charged with ordinary first degree homicide requiring premeditation.
Nevertheless on the proofs, in particular defendant's own testimony revealing his awareness and recollection in detail of the events preceding Kathleen Kinsman's death, no jury question was raised, in our view, as to whether defendant was so impaired by voluntary intoxication as to lack the capacity to form the wilfulness, deliberation and premeditation requisite to prove first degree murder. We recognize that other or additional proofs justifying submission of this issue to the jury may be adduced at a new trial.
Defendant raises five additional issues on appeal: that the trial judge's charge was deficient in failing to instruct the jury as to death by misadventure; that the judge erred in allowing defendant's prior criminal convictions to be admitted into evidence; that defendant is entitled to a new trial since his conduct is no longer punishable as felony murder under N.J.S.A. 2C:11-3; that the kidnapping indictment was faulty and not a true bill of indictment; and that the jury verdict was both improper and inconsistent in view of the acquittal on the count charging defendant with assault with intent to rape.
We conclude, based upon the entire record, that these five additional issues are clearly without merit. R. 2:11-3(e)(2). We note specifically that N.J.S.A. 2C:11-3, as part of the Code of Criminal Justice effective September 1, 1979, is not applicable to offenses committed prior to its effective date and that defendant's prosecution for criminal homicide is governed by prior law in N.J.S.A. 2A:113-1 et seq.
We reverse and remand for a new trial. We do not retain jurisdiction.