97 So.2d 356 (1957)
Prentiss T. PARRISH, Appellant,
v.
STATE of Florida, Appellee.
No. A-7.
District Court of Appeal of Florida. First District.
October 15, 1957.
Rehearing Denied October 30, 1957.
*357 Carlton L. Welch, Jacksonville, for appellant.
Richard W. Ervin, Atty. Gen., for appellee.
TAYLOR, Associate Judge.
The appellant, Prentiss T. Parrish, was charged by indictment with murder in the first degree, tried by a jury and found guilty of murder in the second degree and sentenced accordingly. He has appealed.
The first question requiring consideration is the sufficiency of the evidence to support the verdict of the jury. It is not the function of an appellate court to re-try the case or to substitute its judgment for that of the jury. But if the evidence is wholly insufficient to justify a verdict *358 of guilt, or if the facts established by the evidence do not constitute the offense of which the defendant stands convicted it is the duty of the appellate court to so declare and to reverse a judgment of guilt based upon such verdict. In performing this function the appellate court in order to give the proper weight to a jury verdict approved by the trial court must assume that the jury believed that credible testimony most damaging to the defendant and drew from the facts established those reasonable conclusions most unfavorable to the defendant.
Applying this rule we find that the jury in this case was justified in finding that the deceased was the former wife of the appellant who had divorced him because of extreme cruelty including brutal physical violence; that the appellant had stated in most solemn terms that if he could not "have" deceased no one else would, that deceased had married another man, that appellant had told deceased "if you stay in Jacksonville I am going to kill you"; that in the City of Jacksonville in the early hours of the morning of September 22, 1955, appellant was one of four men riding in a car driven by Edward W. Ramsey who was taking instructions from defendant; that appellant was looking for deceased as she left her place of employment about 12:30 A.M.; that a few blocks from the place of deceased's employment they located deceased and another young lady riding in deceased's car and began to pursue them; that deceased attempted to flee by increasing the speed of her car but still retaining some regard for traffic regulations but this proved inadequate; Ramsey maneuvered his car in front of deceased's car forcing her to stop at a point where another car was immediately behind deceased making it impossible for her to get away; appellant left the car in which he was riding and approached deceased who had closed the window and locked the door of her car; deceased cried, "Oh! My God! There is Theo, he is going to kill me"; defendant having tried unsuccessfully to open the door of deceased's car began striking the glass of the window with a bayonet, with which he was then armed, with such force that shattered glass was hurled across deceased and upon the other young lady who was on the opposite side of the car; this young lady opened the door on her side of the car and both the girls attempted to escape in that way; appellant then came around the car and while the first young lady escaped deceased was unable to do so, but the car behind having moved the deceased managed to get back under the wheel, evade the car in which appellant had been riding and renew her flight alone; appellant hurriedly reentered the car in which he had been riding and instructed Ramsey to give chase still holding the bayonet and refusing to surrender it to one of the other occupants of the car; during this pursuit Ramsey's car reached a speed of 70 miles per hour; appellant gave Ramsey instructions to "catch her and run into her if you have to but stop her, block her off"; Ramsey finally passed deceased again but deceased cut sharply to her left and entered another street; Ramsey turned his car so quickly that he ran upon the curb and began still further pursuit of deceased. Under these conditions deceased disregarded a stop sign and drove at a high rate of speed into a through street and in doing so ran into another car being operated in a lawful manner upon that street and in this accident received injuries of which she died within a few hours. The degree of the deceased's fear of appellant and her state of terror during her flight from him is demonstrated by the fact that immediately after the accident in which she had received the wounds of which she shortly died she cried to strangers, "Don't let them cut me. Don't let them cut me".
The appellant urges that this state of facts is insufficient to justify a conclusion of guilt of murder in the second degree. Murder in the second degree is the killing of a human being "when perpetrated by any act imminently dangerous to another, *359 and evincing a depraved mind regardless of human life." Section 782.04, F.S.A.
As used in the statute the word "act" is not limited to a single muscular movement but includes a series of related actions arising from and performed pursuant to a single design or purpose. The acts performed by the driver of the car in which defendant was riding pursuant to instructions from defendant and in carrying out the design and purpose of the defendant are as much the acts of defendant as though he performed them himself. It is immaterial to defendant's guilt whether this driver was a confederate or, as he testified, acted in the beginning without knowledge of any wrongful intent on the part of defendant and later (after the incident which occurred when the cars first stopped) in fear of the defendant. The jury was clearly justified in finding that the driver was the tool of defendant acting under his instructions and carrying out his purposes. His acts were, therefore, in law, the acts of the defendant.
Was this course of conduct imminently dangerous to another? Did it evince a depraved mind regardless of human life? The jury was justified in answering these questions in the affirmative. To place a young woman alone in a car at night in mortal fear of her life by the means and under the circumstances above described (and more elaborately detailed in the testimony) and to pursue her through the streets of the City of Jacksonville at a speed of 60 to 70 miles an hour obviously creates a condition imminently dangerous to her as well as to others who may be lawfully using the streets. The court would be blind to the realities of life if it held that the events narrated could not be properly found by a jury to evince a depraved mind regardless of human life. Thus the acts of the defendant come within the statutory definition of murder in the second degree.
But appellant argues that he is not criminally responsible for the homicide because the deceased died as a result of her own act in driving at a high rate of speed into a through street and striking another car. The trial court correctly stated the law on this subject in his charge to the jury as follows:
"* * * a person who by actual assault or threat of violence causes another person to do an act resulting in physical or corporal injury causing such other person's death is criminally responsible for the homicide. However, to render a person criminally responsible for the death of another under such circumstances, it must appear beyond and to the exclusion of every reasonable doubt (1) that the act or acts done by the deceased to avoid the danger brought about and caused by the defendant were such as a reasonable person would have taken under the circumstances, although it need not appear that there was no other way of avoiding the danger or escaping therefrom, (2) that the apprehension on the part of the deceased was of immediate danger of suffering death or great bodily harm, (3) that the apprehension on the part of the deceased of suffering death or great bodily harm was reasonable and well-grounded and (4) that the injuries received by the deceased which produced death were the natural and probable consequences of the acts of the defendant. In such cases, the defendant's responsibility or justification for such homicide is measured and determined by what would have been the case had the defendant killed such person at the time and place and under the circumstances of the original assault or threat of violence."
This charge is amply supported by the authority. See Letner v. State, 156 Tenn. 68, 299 S.W. 1049, 55 A.L.R. 915; Whiteside v. State, 115 Tex.Cr.R. 274, 29 S.W.2d 399; Commonwealth v. Dorazio, 365 Pa. 291, 74 A.2d 125; Sanders v. Commonwealth, *360 244 Ky. 77, 50 S.W.2d 37; Whaley v. State, 157 Fla. 593, 26 So.2d 656.
We have carefully examined the instructions given the jury and find them to be a full, fair, complete and correct statement of the law applicable to this case.
Appellant also complains of alleged ill effects upon the jury of a verbal exchange which occurred during the final argument of the case between the attorney for the appellant and the state's attorney. This altercation was precipitated by appellant's attorney. It was not of sufficient importance to justify a mistrial. No mistrial was then requested. Under these circumstances no error on the part of the trial court is made to appear.
The judgment appealed from is affirmed.
STURGIS, C.J., and WIGGINTON, J., concur.