EDWARDS, Judge.
Clarence Frederick, Jr., was indicted by the St. Mary Parish grand jury for second degree murder, a violation of LSA-R.S. 14:30.1. Defendant entered a plea of not guilty and not guilty by reason of insanity. A sanity commission was appointed, and defendant was found competent to proceed. After trial by jury, defendant was convicted and sentenced to life imprisonment at hard labor, without benefit of probation, *1289 parole, or suspension of sentence. Defendant appeals urging two assignments of error, as follows:
1. The trial court erred in denying defendant's Motion for a Mistrial when the names of jurors previously called, examined and/or excused were drawn again.
2. The trial court erred in allowing the introduction of evidence of the victim’s pregnancy, which evidence was more prejudicial than probative.
FACTS
Prior to and during the month of August, 1986, defendant and his wife, Angelina Frederick, were experiencing marital difficulties. On the evening of August 7, 1986, defendant prepared a meal for his wife into which he placed barbiturates which had been crushed and made into powder. The victim became unconscious. Later that' same evening, defendant attempted to strangle the victim with his hands, but was unsuccessful. Defendant then killed the victim by strangling her with a length of rope. Defendant then placed two burlap sacks around the victim and secured them with nylon rope. Defendant then loaded the victim into the trunk of a Ford LTD with the assistance of a relative. He then called a cohort to assist him in disposing of the victim’s body.[1] Defendant and the cohort disposed of the victim by throwing her off of a bridge and into a body of water known as the Calumet Cut.
On August 8, 1986, defendant reported to the Franklin Police Department that his wife was missing. On August 10, 1986, a fisherman came across a body in the Calumet Cut and contacted the St. Mary Parish Sheriff’s Office. Personnel from that office retrieved the body and contacted the coroner’s office. The body was transported to a funeral home for an inspection by the coroner. From the inspection, the coroner determined that the body was that of a white female in her early twenties who was approximately eight months pregnant. He also found that the cause of death was strangulation by rope.
On the morning of August 11, 1986, defendant was contacted by an officer from the Franklin Police Department in order possibly to identify clothing that had been found on the body. Defendant claimed he did not recognize the clothing. However, defendant accompanied law enforcement officials to his residence in an attempt to match articles of clothing belonging to his wife with those found on the body. The officers found similar clothing but returned defendant to his place of employment with instructions to contact them if he had any other information about his wife’s disappearance.
Upon return to headquarters, one of the officers was met by friends of the victim inquiring as to the identity of the body which had been found. One of the victim’s friends informed the officer that the Fred-ericks had been having marital problems recently and that the rope found tied around the body recovered from Calumet Cut could possibly have come from the Frederick’s residence. Another friend identified the dress found on the body as one she had given to the victim.
At this time, the officer suspected that the body ■which had been found was that of Angelina Frederick. The officer then requested dental records on Angelina Frederick from, a local dentist. The dentist met the officer at the courthouse and, after comparing the records, determined that the dental records of Angelina Frederick matched the dental work of the body found in Calumet Cut.
Upon securing this information, the officers decided to interview defendant again. On the afternoon of August 11, 1986, after defendant had become a suspect, the officers met with defendant again and advised him of his rights.[2] The officers questioned defendant about the disappearance of his wife and about the nylon rope which had been seen at his residence by one of the *1290 victim’s friends. Defendant, reiterating the story which he had told the officers earlier that morning, stated that he had last seen his wife at approximately 8:00 a.m. on August 8, 1986. The officers then requested that defendant give them permission to search his home.
Defendant executed a consent to search form, and the officers conducting the search found several traces of material which were similar to the burlap sack material in which the victim’s body was wrapped. Defendant had accompanied the officers to his residence. When confronted with this information, defendant denied knowledge of the material and contended that the officers had planted them at his residence. Upon further questioning, defendant stated that he knew what had happened to his wife, but that he did not actually commit the crime. Defendant told the officers that he had paid a black male to kill and dispose of his wife. Defendant was formally placed under arrest at this time and transported to the parish jail. While in custody, defendant gave two taped statements wherein he confessed to planning and carrying out the murder of his wife.
ASSIGNMENT OP ERROR NUMBER ONE
Defendant complains of the trial court’s denial of his motion for mistrial which was urged when the names of jurors previously called and excused were drawn again. Defendant argues that this irregularity prejudiced both his right to have jurors selected indiscriminately from the petit jury venire box, as well as his right to intelligently exercise his peremptory challenges.
We note that, in addition to his motion for a mistrial, the defendant also made an oral motion to quash the jury venire. Generally, the proper procedural vehicle for attacking an irregularity in the drawing of the jury venire is a motion to quash, which must be filed in writing and before trial. LA.C.Cr.P. arts. 532, 535, and 536; State v. Collins, 359 So.2d 174, 177 (La.1978); State v. Foster, 510 So.2d 717, 725 (La.App. 1st Cir.1987), writ denied in part, granted in part on other grounds, and vacated in part on other grounds, 519 So.2d 138 (La.1988). However, the nature of the instant irregularity was such that its occurrence could not have been foreseen. Under these circumstances, it would have been impossible for the defendant to file a pretrial, written motion to quash. Therefore, we conclude that the defendant’s timely objection and motion for a mistrial properly preserved this issue for review on appeal.
LSA-C.Cr.P. art. 784 states as follows:
In selecting a panel, names shall be drawn from the petit jury venire indiscriminately and by lot in open court and in a manner to be determined by the court.
Further, LSA-C.Cr.P. art. 419 states in pertinent part:
A general venire, grand jury venire, or petit jury venire shall not be set aside for any reason unless fraud has been practiced, some great wrong committed that would work irreparable injury to the defendant. ...
Finally, LSA-C.Cr.P. art. 775 provides that:
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial....
The defendant has the burden of establishing fraud or some irreparable injury in the jury selection process. State v. Roy, 496 So.2d 583, 589 (La.App. 1st Gir.1986), writ denied, 501 So.2d 228 (La.1987); State v. Louis, 496 So.2d 563, 566 (La.App. 1st Cir.1986). Mrs. Heloise D. LeBlanc, Deputy Clerk of Court, testified that there were no duplications of cards containing the names of potential jurors on the master jury venire list. Apparently, after three potential jurors’ cards had been pulled and those potential jurors examined and/or excused, these cards were inadvertently placed back into the venire box instead of being destroyed or marked off. As a result, the following day the same three *1291 names were called again. Defendant noted the irregularity before the full petit jury was seated.
That the clerk of court or bailiff made a minor error in the drawing of the names from the petit jury venire box is inconsequential. The fact that the potential jurors’ names were in the pool twice was unintentional. The potential jurors in question did not serve on the petit jury, and defendant failed to demonstrate how he was prejudiced. State v. Carter, 363 So.2d 893, 898 (La.1978). Moreover, mistrial is a drastic remedy and should only be granted on a showing of substantial prejudice. State v. Burge, 486 So.2d 855, 866 (La.App. 1st Cir.), writ denied, 493 So.2d 1204 (La. 1986).[3] Accordingly, we find defendant’s first assignment of error is without merit.
ASSIGNMENT OP ERROR NUMBER TWO
Defendant further claims that the trial court erred in allowing the introduction of evidence of the victim’s pregnancy in that the evidence was more prejudicial than probative. Defendant argues that such evidence was not relevant because he did not put identification of the victim at issue. Further, defendant argues that deferral by the court in ruling on defendant’s motion in limine, by which he sought to exclude this evidence, prejudiced his right to a full and effective voir dire examination of the prospective jurors.
Defendant filed a pretrial motion in li-mine, seeking to exclude any reference to the fact that the victim was eight months pregnant at the time of the commission of the crime. The trial court reserved ruling on the motion, stating it would rule on issues relating to the victim’s pregnancy in the various contexts in which this fact might arise.
While testifying in reference to questions by the prosecution concerning his knowledge of the identity of the body found, Detective Longman referred to the fact that the body found in Calumet Cut appeared to be in the latter stages of pregnancy. Defendant objected to this testimony. The trial judge ruled that the victim’s pregnant condition was relevant for purposes of identification.[4]
LSA-R.S. 15:435 provides that evidence must be relevant to a material issue at trial if it is to be introduced. See also State v. Andrews, 451 So.2d 175, 178 (La.App. 1st Cir.), writ denied, 457 So.2d 17 (La.1984). LSA-R.S. 15:441 provides that relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent. Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible. Relevancy of evidence is determined by the purpose for which it is offered. LSA-R.S. 15:442. However, it is generally accepted that the trial judge should exclude evidence, although relevant, if its probative value is outweighed by the risk that its admission will tend to excite the emotions of the jury to the undue prejudice of the defendant. State v. Ludwig, 423 So.2d 1073, 1079 (La.1982).
*1292 In questions of relevancy, much discretion is vested in the trial judge. Such rulings will not be disturbed on appeal in the absence of a showing of manifest abuse of discretion. State v. Ferguson, 540 So.2d 1116, 1122 (La.App. 1st Cir.1989).
Defendant’s contention that he did not put the identity of the victim in dispute did not relieve the state of the burden of establishing the identity of the victim beyond a reasonable doubt. State v. Hamilton, 249 La. 392, 187 So.2d 417, 421 (1966). Identification is a material issue in any criminal case. State v. Patch, 470 So.2d 585, 588 (La.App. 1st Cir.), writ denied, 475 So.2d 358 (La.1985). The description of the victim’s condition was pertinent for identification purposes. See State v. Pettle, 286 So.2d 625, 632 (La.1973). The ultimate test, however, is whether or not the probative value of the description outweighs its probable inflammatory effect. State v. Whittaker, 479 So.2d 380, 383 (La.App. 1st Cir.1985).
The detective’s testimony tended to establish the sequence of events which led up to the identification of the victim. Further, his testimony does not appear to have been of such character as would unduly inflame or arouse the jury. See State v. Redwine, 337 So.2d 1041, 1045 (La.1976). Therefore, this argument is without merit.
In addressing defendant’s argument that the deferred ruling on his motion in limine prejudiced his right to a full and effective voir dire, we note that when the trial court deferred ruling on the motion, defendant neither raised the issue of prejudice of his right to a full and effective voir dire to the court nor did he object to the court’s deferral of its ruling. It is true that an accused in a criminal case is constitutionally entitled to a full and complete voir dire. La. Const. Art. I, § 17; LSA-C.Cr.P. art. 786; State v. Burton, 464 So.2d 421, 425 (La.App. 1st Cir.), writ denied, 468 So.2d 570 (La.1985). However, after a complete review of the record, we cannot say that the trial court’s denial of defendant’s motion in limine limited the scope of defendant’s voir dire examination in any way. Therefore, this argument is without merit.
For the reasons assigned, the conviction and sentence are affirmed.
SENTENCE AND CONVICTION AFFIRMED.

. The cohort of the defendant and one of the defendant's relatives were also charged in connection with this matter but are not involved in this appeal.

. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. As pointed out previously, a motion for mistrial is not the proper procedural device for attacking an irregularity in the drawing of the jury venire. However, since the trial court addressed the motion, we review it now only for purposes of completeness. Otherwise, defendant’s complaints of the alleged irregularities in the drawing of the jury venire would have been waived. See LSA-C.Cr.P. art. 535(D).

. The evidence of the victim’s pregnant condition arose in at least two other contexts at trial. The state introduced the taped confessions of the defendant wherein he referred to the victim’s pregnancy. The state offered to excise those portions of the tape where defendant referred to the victim’s pregnancy, but defendant refused, stating that the evidence had already been admitted to his prejudice and any attempt to excise the matter from the taped confession would only draw the jurors’ attention to that evidence. See also LSA-R.S. 15:450 and State v. Green, 443 So.2d 531, 537-538 (La.1983).
Also, defendant agreed with the state to enter into a stipulation regarding the testimony of one of the state’s expert witnesses, Dr. Evariste Tra-han, wherein it was stipulated that if the doctor were recalled, he would testify that upon examination of the body of the victim, it was obvious that she was approximately eight months pregnant.