2002 WY 134

**Marcos ORONA–RANGAL,**
**Appellant (Defendant),**

v.

**The STATE of Wyoming,**
**Appellee (Plaintiff).**

**No. 01–62.**

Supreme Court of Wyoming.

Sept. 11, 2002.

Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Tina N. Kerin, Assistant Appellate Counsel, Representing Appellant.

Hoke MacMillan, Attorney General; Paul S. Rehurek, Deputy Attorney General; D.

Michael Pauling, Senior Assistant Attorney General; and T. Alan Elrod, Assistant Attorney General, Representing Appellee.

Before HILL, C.J., and GOLDEN, LEHMAN,* KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1]   Marcos Orona–Rangal drove his vehicle at a high speed through a stop light, killing one person and injuring two others. A jury convicted him on one count of aggravated homicide by vehicle under Wyo. Stat. Ann. § 6–2–106(b)(ii) (LexisNexis 2001) and two counts of reckless endangerment under Wyo. Stat. Ann. § 6–2–504(a) (LexisNexis 2001).   He appeals, claiming the trial court erred in admitting testimony regarding the deceased's pregnancy and insufficient evidence existed to convict him on each count. Finding no reversible error, we affirm.

## ISSUES

[¶ 2]   Mr. Orona–Rangal presents these issues for our review:

I.   Did the trial court err in allowing irrelevant evidence of the deceased's pregnancy; and in the alternative, if relevant, was such evidence unduly prejudicial to Appellant?

II.   Was there insufficient evidence to convict Appellant of the charges of reckless endangerment?

III.   Was there insufficient evidence to convict Appellant of the crime of aggravated homicide by vehicle, as the evidence indicated that the proximate cause of death was the action of Mr. Gomez, the individual who pursued Appellant?

The State of Wyoming phrases the issues as:

I.   Did the district court err in admitting relevant evidence of the pregnancy of Appellant's victim?

II.   Does the record contain sufficient evidence to support Appellant's convictions?

* Chief Justice at time of oral argument

## FACTS

[¶ 3]   Mr. Orona–Rangal, age twenty-nine, and Christina Gomez, age eighteen, were engaged in a romantic relationship.   The record is unclear as to whether Ms. Gomez's parents were aware of the relationship.   On February 29, 2000, Ms. Gomez met Mr. Orona–Rangal after school at a nearby convenience store.   He then drove her to work where they noticed her father, Rufujio Gomez, waiting in the parking lot.   Mr. Orona–Rangal sped out of the parking lot.   Mr. Gomez followed, and a high-speed chase ensued.   Several witnesses recounted that both Mr. Orona–Rangal and Mr. Gomez traveled at high rates of speed, passed through multiple red lights, and wove through traffic, barely missing other vehicles.

[¶ 4]   Two accident reconstruction experts testified that Mr. Orona–Rangal was traveling at a minimum speed of seventy to seventy-two miles per hour in a forty-miles-per-hour zone when he reached the intersection where the accident occurred.   Leona Moon was waiting at the intersection for her light to change.   When her light turned green, she entered the intersection to make a left-hand turn.   Mr. Orona–Rangal drove through his red light, attempted to brake, and crashed into the driver's side of Ms. Moon's vehicle. The vehicle was propelled across the intersection where it collided with Joan Suhr's vehicle.   Ms. Suhr and Ms. Gomez were injured, and Ms. Moon died at the scene of the accident.

[¶ 5]   After a three-day trial, the jury found Mr. Orona Rangal guilty on one count of aggravated homicide by vehicle and two counts of reckless endangerment.   The trial court sentenced him to serve two consecutive one-year terms in the Natrona County Detention Center on the reckless endangerment counts plus a consecutive term of twelve to seventeen years in the Wyoming State Penitentiary on the aggravated homicide count. Mr. Orona Rangal appeals.

## DISCUSSION

### A.   Admission of Evidence

[¶ 6]   Ms. Moon was seven months' pregnant at the time of the fatal accident.   Prior

to trial, Mr. Orona–Rangal filed a motion, seeking to exclude any reference to her pregnancy. The trial court denied the motion while cautioning the prosecution to refrain from dwelling upon the pregnancy any more than necessary. Mr. Orona–Rangal filed a motion to reconsider the denial and additionally offered to stipulate that Ms. Moon's death was a direct result of the collision with his vehicle. The state rejected the stipulation, and the trial court denied the motion to reconsider but proposed the defense submit a cautionary instruction concerning Ms. Moon's pregnancy. The defense did not submit a cautionary instruction on this issue.

[¶ 7] At trial, evidence of Ms. Moon's pregnancy arose in four contexts. In the prosecution's opening statement, the prosecutor explained to the jury that Ms. Moon was twenty-one years old, seven months' pregnant, and engaged to be married. The prosecution's first witness was Ms. Moon's fiancé. The prosecutor asked him, "[W]hat was her physical condition at the time that you resided with her," and he responded that she was seven months' pregnant. Next, the prosecution asked James Thorpen, M.D., the Natrona County coroner, to describe Ms. Moon's injuries. In addition to his testimony that the cause of her death was "[m]assive recent chest, abdominal, and pelvic injuries," Dr. Thorpen told the jury the force of the impact caused extensive hemorrhaging of the placenta from the uterus which led to the fetus' death. In closing argument, the prosecutor alluded to the pregnancy stating Ms. Moon was "about to engage in the most important aspect of her life. She was about ready to start a family, and she was about ready to get married."

[¶ 8] Mr. Orona–Rangal argues the evidence of Ms. Moon's pregnancy was irrelevant and inadmissible or, in the alternative, if the evidence was relevant, it should have been excluded as highly prejudicial because it appealed to the jurors' sympathy for Ms. Moon and created a sense of outrage against him. In response, the state contends the evidence was relevant for three reasons. First, it tended to prove Ms. Moon's identity. Second, it showed she was more likely to exercise caution while driving and, thus, her actions did not contribute to the accident which caused her death. And, finally, evidence of her physical condition at the time of the accident was relevant to determine the cause of her death.

[¶ 9] Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." W.R.E. 401. Generally, all relevant evidence is admissible; however, irrelevant evidence is not admissible. W.R.E. 402. In criminal cases, "[e]vidence is always relevant if it tends to prove or disprove one of the elements of the crime charged." *Grabill v. State,* 621 P.2d 802, 809 (Wyo.1980); *see also Lancaster v. State,* 2002 WY 45, ¶ 42, 43 P.3d 80, ¶ 42 (Wyo.2002); *Geiger v. State,* 859 P.2d 665, 667 (Wyo.1993). Relevant evidence may be excluded, however, if "its probative value is substantially outweighed by the danger of unfair prejudice." W.R.E. 403. For this court to conclude that the trial court admitted unduly prejudicial evidence in violation of W.R.E. 403, the appellant must demonstrate "that the evidence had little or no probative value and that it was extremely inflammatory or introduced for the purpose of inflaming the jury." *Apodaca v. State,* 627 P.2d 1023, 1027 (Wyo.1981). The trial court is given broad discretion in ruling on questions concerning the relevancy of evidence, and we will reverse its decision only when there is a clear abuse of discretion.

[¶ 10] We have said:

"Evidentiary rulings are within the sound discretion of the trial court and include determinations of the adequacy of foundation and relevancy, competency, materiality, and remoteness of the evidence. This court will generally accede to the trial court's determination of the admissibility of evidence unless that court clearly abused its discretion." *Solis v. State,* 981 P.2d 34, 36 (Wyo.1999) (citation omitted). We have described the standard of an abuse of discretion as reaching the question of the reasonableness of the trial court's choice. Judicial discretion is a composite of many things, among which are conclusions drawn from objective crite-

ria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. "In the absence of an abuse of discretion, we will not disturb the trial court's determination." [*Griswold v. State*, 2001 WY 14, ¶ 7, 17 P.3d 728, ¶ 7 (Wyo.2001).] The burden is on the defendant to establish such abuse.

*Skinner v. State*, 2001 WY 102, ¶ 25, 33 P.3d 758, ¶ 25 (Wyo.2001), *cert denied*, —— U.S. ——, 122 S.Ct. 1554, 152 L.Ed.2d 477 (2002) (some citations omitted).

[¶ 11] To determine whether the trial court erred by allowing evidence of Ms. Moon's pregnancy at the time of the accident, we must inquire as to whether the evidence was relevant to the charges and, if it was relevant, whether its possible prejudicial effect on the jury outweighed its probative value. The state asserts evidence of Ms. Moon's pregnancy was relevant because it tended to prove her identity. Although her identity was not in dispute, in every homicide case the state must establish the identity of the person killed. *Wilks v. State*, 2002 WY 100, ¶ 13, 49 P.3d 975, ¶ 13 (Wyo.2002); *State v. Broberg*, 342 Md. 544, 677 A.2d 602, 610–12 (1996); *State v. Frederick*, 554 So.2d 1288, 1292 (La.Ct.App.1989) ("Defendant's contention that he did not put the identity of the victim in dispute did not relieve the state of the burden of establishing the identity of the victim beyond a reasonable doubt. Identification is a material issue in any criminal case." (Citation omitted.)). "The ultimate test, however, is whether or not the probative value of the description outweighs its probable inflammatory effect." *Frederick*, 554 So.2d at 1292. This case is not an example of an instance where there were any lingering doubts about the victim's identity. *See Frederick*, 554 So.2d 1288 (holding victim's pregnant condition was pertinent for identification purposes because she was mur-

dered and thrown off a bridge into a body of water. Law enforcement subsequently required dental records and the aid of family and friends to prove her identity). Ms. Moon's identity was not a consequential fact at trial; thus, presentation of evidence regarding her pregnant condition to prove her identity was not necessary or relevant.

[¶ 12] Next, the state argues the evidence was relevant to show Ms. Moon was more likely driving with great caution and was, therefore, not the cause of the accident, presumably relying on a theory that pregnant women tend to be more cautious drivers. This argument is less than compelling since the defense did not contend Ms. Moon's driving was responsible for the accident. The state asserts the defense's accident reconstruction expert attempted to undermine eyewitness testimony that Ms. Moon entered the intersection with great caution and legally. A review of the record disproves the state's contention. The state's expert concluded Mr. Orona Rangal was traveling at seventy-two miles per hour, the defense's experts concluded his speed was seventy miles per hour, and neither suggested Ms. Moon was in any way at fault.[1]

[¶ 13] Finally, the state maintains the evidence was relevant to explore whether Ms. Moon's pregnancy was a factor, apart from Mr. Orona–Rangal's actions, in her death. However, Mr. Orona–Rangal did not argue her pregnancy was the proximate cause of her death. In fact, he tried to stipulate that the collision was the proximate cause of her death. In its brief, the state asserts Mr. Orona–Rangal conceded in his appellate brief that Dr. Thorpen's testimony revealed the pregnancy played a part in her death.[2] Upon a careful review of Mr. Orona Rangal's brief, it is apparent the state's assertion regarding the "concession" is unsupported and misleading. Moreover, at no time did Dr. Thorpen even insinuate Ms. Moon's pregnan-

---

1. The defense's expert criticized the state's data suggesting reliance upon it would result in a conclusion that Ms. Moon was traveling twenty-eight miles per hour which was inconsistent with an eyewitness' testimony that she was at a complete stop at the intersection and, after the light turned green, she waited three seconds before proceeding slowly into the intersection.

2. In its brief, the state specifically states: "Indeed, in his brief, [Mr. Orona–Rangal] concedes that testimony showed that the pregnancy played a part in her death." The state even directs this court to a specific page number in Mr. Orona Rangal's appellate brief, yet we cannot find such a concession.

cy contributed to her death. The pertinent part of his testimony is as follows:

She was also pregnant, in her third trimester, approximately seven months. There was extensive hemorrhage to the placenta, which was attached inside of the uterus. The fetus was also dead but exhibited no particular traumatic injuries. The ... cause of the fetal death would be because—the fetus died because the placenta was separated and was due to the high-energy impact. The fetus is protected within the uterus—

[Objection lodged.]

The trial court overruled the defense's objection stating the pregnancy evidence was an integral part of the medical evidence and it would have been difficult for Dr. Thorpen to edit his testimony to exclude it. Even if it was somehow necessary for Dr. Thorpen to reference Ms. Moon's pregnancy to assure a complete evaluation of her injuries, the prosecution took undue advantage of that necessity by referring to the pregnancy in opening argument, closing argument, and Ms. Moon's fiancé's direct testimony. Any probative value of presenting the evidence in those instances was substantially outweighed by the danger of unfair prejudice.

[¶ 14] In *Lewek v. State*, 702 So.2d 527, 534 (Fla.Dist.Ct.App.1997), a vehicular homicide case, the court held similar testimony was unduly prejudicial and could only be calculated to play upon the jury's passions and invoke sympathy for the victims of the accident. In that case, three witnesses testified the victim was pregnant, and one witness mentioned the baby was due to be born three days after the accident. 702 So.2d at 533–34. Similarly, in *People v. Lewis*, 165 Ill.2d 305, 209 Ill.Dec. 144, 651 N.E.2d 72 (1995), the Illinois Supreme Court held the evidence of the victim's pregnancy bore no relationship to the appellant's guilt or innocence and was, therefore, inadmissible. The court stated,

"[E]vidence that a murder victim was pregnant at the time of her murder is no more welcome than evidence that the victim left behind a family." 209 Ill.Dec. 144, 651 N.E.2d at 84.

■ [¶ 15] We are persuaded by this reasoning and conclude evidence of Ms. Moon's pregnant condition was irrelevant. Furthermore, the evidence does not satisfy this court's W.R.E. 403 balancing test. Had the evidence been properly excluded, the prosecution's case would not have suffered any significant damage. Trial courts must exercise great caution so defendants will be convicted on the basis of the evidence pertinent to the crimes charged and not on the basis of evidence calculated to appeal to the jury's passions or prejudices. After reviewing the record, we conclude evidence of Ms. Moon's pregnancy was irrelevant because it did not make any fact that was of consequence to the determination of Mr. Orona–Rangal's guilt more probable or less probable and should have been excluded.

■ [¶ 16] Having determined the trial court committed error, we must ascertain whether the error affected any substantial rights of the accused, providing grounds for reversal, or whether it was harmless.[3] The harmless error standard is set out in W.R.A.P. 9.04: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded by the reviewing court." *See also* W.R.Cr.P. 52(a). An error is harmful if there is a reasonable possibility that the verdict might have been more favorable to the defendant had the error never occurred. To demonstrate harmful error, the defendant must show prejudice under "circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play." *Johnson v. State*, 790 P.2d 231, 232 (Wyo. 1990); *see* 75A Am.Jur.2d *Trial* § 666 (1991). The evidence against Mr. Orona–Rangal was

---

3. The state repeatedly argues that references to the testimony regarding the victim's pregnancy were limited and, therefore, not prejudicial. It bolsters that theory by offering statistics as to the number of pages or lines in the transcript that arguably constitute error. Apparently, the state erroneously assumes this court undertakes a quantitative rather than a qualitative analysis when reviewing whether the admission of certain testimony results in prejudicial error. We remind the state of *Miller v. State*, 904 P.2d 344, 354 (Wyo.1995), wherein we held the exposure of a jury panel to a single statement by a prospective juror that the accused was a horse thief required reversal of the conviction.

overwhelming and was strongly supported by multiple eyewitnesses. There is not a reasonable possibility that, but for the evidence of Ms. Moon's pregnancy, the verdict might have been more favorable. We conclude the evidence, although prejudicial, was harmless. However, we want to make it clear that we foresee only rare circumstances where the evidence of the victim's pregnancy would be relevant in a criminal prosecution. If the state's evidence is not as compelling as in the case before us, the introduction of such evidence may necessitate reversal.

## B. Sufficiency of the Evidence on the Reckless Endangerment Charges

[¶ 17] Mr. Orona–Rangal argues there was insufficient evidence to support his convictions for reckless endangerment because the victims were not seriously injured. The reckless endangerment statute, § 6–2–504(a), provides, "A person is guilty of reckless endangering if he recklessly engages in conduct which places another person in danger of death or serious bodily injury." He contends evidence of actual serious bodily injury is required because Wyo. Stat. Ann. § 6–1–104(a)(ix) (LexisNexis 2001) defines "recklessly" as the following conduct: "A person acts recklessly when he consciously disregards a substantial and unjustifiable risk that the harm he is accused of causing will occur, and the harm results." Mr. Orona–Rangal claims that, when these two provisions are read together, the "harm" contemplated in the definition of "recklessly" is death or serious bodily injury. Thus, he contends death or serious bodily injury must result before a person can be convicted of reckless endangerment and neither Ms. Gomez nor Ms. Suhr incurred serious bodily injury.

[¶ 18] In deciding this issue, we must apply our well established standard for construing statutes.

> We attempt to interpret statutes in accordance with the legislature's intent. We begin by making an " 'inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection.' " *Parker Land and Cattle Company v. Wyoming Game and Fish Commission,* 845 P.2d

1040, 1042 (Wyo.1993) (quoting *Rasmussen v. Baker,* 7 Wyo. 117, 133, 50 P. 819, 823 (1897)). We construe statutes as a whole, giving effect to every word, clause, and sentence, and we construe together all parts of the statutes on the same subject. We give effect to the plain language of unambiguous statutes. We resort to extrinsic aids of statutory interpretation, such as legislative history or intent, only when statutes are ambiguous.

*Dike v. State,* 990 P.2d 1012, 1018 (Wyo.1999) (some citations omitted). Although the legislature could have written § 6–2–504(a) and § 6–1–104(a)(ix) so the two provisions would dovetail more seamlessly, we believe the definition of "recklessly" does not require "death or serious bodily injury." Rather, the term "harm" in the definition of "recklessly" refers to engaging "in conduct which places another person in danger of death or serious bodily injury." It logically follows that the harm which must result is actually placing another person in danger of death or serious bodily injury. This interpretation gives effect to the plain language of § 6–2–504(a). Mr. Orona Rangal's interpretation of the statute is simply incorrect.

[¶ 19] Using the appropriate interpretation of the statutes, we address the claim that the evidence was insufficient to sustain the convictions for reckless endangerment by examining the evidence concerning whether Mr. Orona–Rangal's actions actually put the injured victims in danger of death or serious bodily injury, and we apply the following standard:

> This Court assesses whether all the evidence which was presented is adequate enough to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by a finder of fact when that evidence is viewed in the light most favorable to the State. We will not substitute our judgment for that of the jury when we are applying this rule; our only duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did.

*Hodges v. State,* 904 P.2d 334, 339 (Wyo. 1995) (citation omitted); *see also Robinson v.*

*State,* 11 P.3d 361, 368 (Wyo.2000), *cert. denied,* 532 U.S. 980, 121 S.Ct. 1620, 149 L.Ed.2d 483 (2001). In this instance, there was ample evidence for the jury to conclude as it did. Mr. Orona–Rangal's excessive speed, disregard for traffic laws, and erratic driving resulted in a collision of such force that Ms. Moon's vehicle was propelled across the intersection and collided with Ms. Suhr's vehicle. That collision injured both Ms. Gomez and Ms. Suhr, and only good fortune prevented those injuries from being much more serious. More than sufficient evidence existed to prove Mr. Orona–Rangal placed his passenger—Ms. Gomez—and an unsuspecting third party—Ms. Suhr—in danger of death or serious bodily injury.

### C. Sufficiency of the Evidence on the Aggravated Homicide by Vehicle Charge

[¶ 20] Mr. Orona–Rangal contends insufficient evidence existed to support a required element of aggravated homicide by vehicle that he was the proximate cause of Ms. Moon's death. *See* § 6–2–106(b)(ii). Instead, he asserts Mr. Gomez's chase was the proximate cause of the collision with Ms. Moon because, if Mr. Gomez had not chased him, the collision would not have occurred. We apply the same sufficiency-of-the-evidence standard as set forth in the previous section.

[¶ 21] The state argues that, at trial, Mr. Orona–Rangal specifically disclaimed the defense that Mr. Gomez was the proximate cause. It points to the following colloquy:

THE COURT: It looks like, [Defense Counsel]—correct me if I'm wrong—that you're going to defend this on the grounds he was being chased by Mr. Gomez.

[DEFENSE COUNSEL]: Obvious-well, I won't say obvious. I'm not—I do think that could account for lack of attention on his part at—during different parts of the chase, as it were. Perhaps what I'm getting at will become clearer during Mr. Orona Rang[a]l's testimony and closing argument.

THE COURT: If you're going to assert that as a defense, you probably want to have some authority prepared for that.

[DEFENSE COUNSEL]: I'm not going to assert it as a defense.

[PROSECUTOR]: He's not?

THE COURT: That's what he indicated. He said that would not be an affirmative defense.

Irrespective of the disclaimer, the burden is on the state to prove, beyond a reasonable doubt, each element of the crime charged. Section 6–2–106(b)(ii) (emphasis added) is explicit and provides:

(b) A person is guilty of aggravated homicide by vehicle and shall be punished by imprisonment in the penitentiary for not more than twenty (20) years, if:

. . .

(ii) He operates or drives a vehicle in a reckless manner, ***and his conduct is the proximate cause of the death of another person.***

Therefore, whether or not Mr. Orona–Rangal disclaimed the "defense" that Mr. Gomez was the proximate cause of the accident, the state still bears the burden of proving proximate cause. *See McLaughlin v. State,* 780 P.2d 964, 965 (Wyo.1989) (holding aggravated homicide by vehicle requires the state to prove the defendant's conduct was the proximate cause of the death of another person). The state also maintains Mr. Orona–Rangal cannot raise the issue for the first time on appeal. We find this argument unpersuasive since insufficiency of the evidence is generally raised for the first time on appeal.

[¶ 22] When the evidence is viewed in the light most favorable to the prosecution, any rational trier of fact could find the essential element of proximate cause beyond a reasonable doubt. *Broom v. State,* 695 P.2d 640, 642 (Wyo.1985). "Proximate cause" was defined for the jury as "a cause which, in continuous sequence, unbroken by an independent, intervening cause, produces the injury. It is one without which the injury would not have occurred. It brings about the injury either immediately or through happenings which follow one after another." "Proximate cause is a question of fact in the usual case, reserved for . . . determination by the trier of fact, unless the evidence is such that reasonable minds could not disagree." *Turcq v. Shanahan,* 950 P.2d 47, 52 (Wyo. 1997).

[¶ 23] Mr. Gomez's actions were not the proximate cause of the victim's death because

they did not, in a continuous sequence, produce the injury. When Mr. Gomez began to pursue Mr. Orona–Rangal, the latter had many choices other than to drive at a high speed on the route he chose, ultimately smashing into Ms. Moon's vehicle. Instead, Mr. Orona–Rangal's actions became the intervening cause which ultimately produced the injury. Mr. Orona–Rangal's cited authority fails to support his theory. In *Parrish v. State*, 97 So.2d 356 (Fla.Dist.Ct.App. 1957), a passenger armed with a bayonet forced the driver to pursue the victim, the passenger's former wife. The victim attempted to flee by increasing her speed and ultimately disregarded a stop sign, struck another vehicle, and died. 97 So.2d at 358. A jury convicted the passenger of second-degree murder. *Id.* at 357. The Florida District Court of Appeal held the trial court correctly stated the law in its charge to the jury when it stated: "[A] person who by actual assault or threat of violence causes another person to do an act resulting in physical or corporal injury causing such other person's death is criminally responsible for the homicide." *Id.* at 359. This case is factually distinguishable because no evidence was presented that Mr. Gomez brandished a weapon or, in any other way, forced Mr. Orona Rangal to flee. Mr. Orona–Rangal simply saw Mr. Gomez and chose to speed away, thereby causing Ms. Moon's death. Under these circumstances, the *Parrish* decision is not applicable.

[¶ 24] Mr. Orona–Rangal also asks this court to consider Wyoming decisions involving pursuits of suspects by law enforcement which hold an officer's conduct can be a proximate cause of a third person's injuries where circumstances indicate an officer's conduct was extreme or outrageous. *See Board of County Commissioners of Teton County ex rel. Teton County Sheriff's Department v. Bassett*, 8 P.3d 1079, 1086 (Wyo. 2000); *DeWald v. State*, 719 P.2d 643, 650 (Wyo.1986). These cases are analyzed under the civil concept of comparative fault; therefore, we do not find them persuasive.

[¶ 25] The state was required to present sufficient evidence so a jury could form a reasonable inference that Mr. Orona–Rangal's conduct was the cause which, in continuous sequence, unbroken by an independent, intervening cause, caused Ms. Moon's death. Considerable evidence was introduced through eyewitness testimony to demonstrate that Mr. Orona–Rangal drove at excessive speeds, deliberately disregarded multiple stop lights, remained steadfast in his attempt to elude Mr. Gomez despite several near-misses with other vehicles, and made numerous illegal and dangerous lane changes. The jury clearly rejected Mr. Orona–Rangal's attempts to shift responsibility for his actions to Mr. Gomez. These facts are sufficient to support a reasonable inference of proof beyond a reasonable doubt that Mr. Orona–Rangal was indeed the proximate cause of Ms. Moon's death. We will not second-guess the jury's determination and will defer to its ability to fairly resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts. *Willis v. State*, 2002 WY 79, ¶ 8, 46 P.3d 890, ¶ 8 (Wyo.2002). Based on the foregoing reasons, we conclude there was sufficient evidence to sustain Mr. Orona Rangal's conviction.

[¶ 26] Affirmed.