2007 WY 40

**Derek DUNSMORE, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 05–205.

Supreme Court of Wyoming.

March 12, 2007.

Representing Appellant: Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Ryan R. Roden, Senior Assistant Appellate Counsel. Argument by Mr. Roden.

Representing Appellee: Patrick J. Crank, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Dee Morgan, Senior Assistant Attorney General. Argument by Ms. Morgan.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1] A jury found Derek Dunsmore ("the appellant") guilty of child abuse, in violation of Wyo. Stat. Ann. § 6–2–503(b)(i) (LexisNexis 2003), but not guilty of aggravated assault and battery, in violation of Wyo. Stat. Ann. § 6–2–502(a)(i) (LexisNexis 2003). The appellant now appeals his child abuse conviction, claiming that the district court erred in denying his motions for a mistrial and a new trial, that the district court failed properly to instruct the jury on the applicable law, and that his conviction was not supported by sufficient evidence. We agree that sufficient

evidence did not exist to support the jury's guilty verdict and, therefore, reverse.

### ISSUES

[¶ 2] The dispositive issue is whether sufficient evidence existed for the jury to find the appellant guilty beyond a reasonable doubt of recklessly inflicting physical injury on his stepdaughter.

### FACTS

[¶ 3] On January 27, 2003, the appellant was working from home in Cheyenne, Wyoming, and watching his two-year-old stepdaughter, MR, while his wife worked. At about 11:30 a.m., the appellant telephoned emergency services to request aid for MR because she "just fell down the stairs." MR was taken to the hospital by emergency services personnel because she had symptoms "indicative of a possible head injury." Doctors performed a CAT scan upon MR, the result of which indicated that MR had suffered a subdural hematoma, meaning "a bleed inside of the brain in between the brain and the covering of the brain, the dura." The bleeding inside her skull "pushe[d] [MR's] brain off to one side," causing her brain to swell and ultimately endangering her life. A neurosurgeon performed surgery to evacuate the blood from the subdural area and MR was taken to Children's Hospital in Denver, Colorado. MR's doctors, while preparing her for surgery, also noted the existence of older bruising on her scalp that occurred prior to her subdural hematoma.

[¶ 4] The Cheyenne police department officers who investigated the incident concluded that the appellant's explanation of the incident was inconsistent with MR's injury. The appellant was subsequently arrested and charged with aggravated assault and battery in violation of Wyo. Stat. Ann. § 6–2–502(a)(i),[1] and, as an alternative charge, child abuse in violation of Wyo. Stat. Ann. § 6–2–503(b)(i).[2]

---

1. That statute states:

   (a) A person is guilty of aggravated assault and battery if he:
   (i) Causes serious bodily injury to another intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

Wyo. Stat. Ann. § 6–2–502(a)(i).

2. Under Wyo. Stat. Ann. § 6–2–503(b)(i),

   (b) Except under circumstances constituting a violation of W.S. 6–2–502, a person is guilty of child abuse, a felony punishable by imprisonment for not more than five (5) years, if a

[¶ 5]   After a four-day trial, the jury found the appellant not guilty of aggravated assault and battery, but found him guilty of child abuse.   The jury returned a special verdict for the alternative elements of the child abuse charge wherein it unanimously found that the appellant *recklessly* inflicted physical injury on MR, but did not unanimously find that he *intentionally* inflicted physical injury.   On May 6, 2005, the district court sentenced the appellant to a term of not less than twelve nor more than twenty-four months incarceration.   He was released on bond pending the outcome of this appeal.   Specific facts and testimony from the appellant's trial will be discussed as relevant herein.

### STANDARD OF REVIEW

[¶ 6]   In   order   to   determine whether evidence was sufficient to sustain a conviction, we apply the following standard:

This Court assesses whether all the evidence which was presented is adequate enough to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by a finder of fact when that evidence is viewed in the light most favorable to the State.   We will not substitute our judgment for that of the jury when we are applying this rule; our only duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did.

*Orona–Rangal v. State*, 2002 WY 134, ¶ 19, 53 P.3d 1080, 1086 (Wyo.2002) (quoting *Hodges v. State*, 904 P.2d 334, 339 (Wyo. 1995)); *see also DeWitt v. State*, 917 P.2d 1144, 1148 (Wyo.1996) (applying the standard in a child abuse appeal).

### DISCUSSION

[¶ 7]   The   district   court   instructed   the jury that the elements of child abuse under Wyo. Stat. Ann. § 6–2–503(b)(i) were:

> person responsible for a child's welfare as defined in W.S. 14–3–202(a)(i) intentionally or recklessly inflicts upon a child under the age of eighteen (18) years:

1. On or about the 27th day of January 2003;
2. In the County of Laramie and State of Wyoming;
3. The Defendant, Derek Dunsmore;
4. Being 18 years of age or older and a person responsible for M.R.'s welfare;
5. Intentionally or recklessly;
6. Inflicted physical injury;
7. Upon M.R., a child under the age of 18 years.

The jury returned a special verdict finding that the appellant recklessly inflicted physical injury on MR, but acquitted him of intentionally inflicting physical injury on the child.[3]   Therefore, we must view the evidence that indicates that the appellant inflicted a reckless injury on MR in the light most favorable to the State, but we must reject, as the jury did, the State's evidence that tends only to show that the appellant intentionally harmed MR.

[¶ 8]   The State sought to convince the jury at trial that the appellant intentionally struck MR and that his claim that she fell down a staircase was untrue.   To that end, the State presented various doctors who either personally examined MR or later examined her case file.   The State also presented testimony from the Cheyenne police officers and detectives who were involved in investigating this case, MR's biological mother and father, and her paternal grandmother.   In our review of the record, it appears that the State made no cogent attempt at trial to argue that MR's injury might have been inflicted recklessly rather than intentionally.

[¶ 9]   Nearly every medical expert examined by the State testified that MR's subdural hematoma would not likely be caused by a fall down a staircase.   As one doctor explained, "[a] child who falls down carpeted stairs would have a series of small falls and not one large fall."   Another surgeon opined that "this could have been a case of nonaccidental trauma."   The State's witnesses also

> (i) Physical injury as defined in W.S. 14–3–202(a)(ii)(B), excluding reasonable corporal punishment[.]

**3.**   It is not disputed that sufficient evidence exists to satisfy the other elements of the charge.

testified, as a rebuttal to questions from defense counsel, that they did not believe that MR's injury on January 27 was a "rebleed" of a chronic hematoma, meaning that they doubted that MR had suffered a hematoma days before and that a fall down the stairs on the 27th caused new bleeding from the older hematoma. The State also elicited testimony that the medical history given to MR's treating physicians was incomplete or inaccurate, apparently in an attempt to allow the jury to infer that the appellant and MR's mother had something to hide. Finally, one doctor testified that MR had recently suffered a torn frenulum in her mouth, an injury that would have bled "like crazy"; however the appellant and MR didn't report any bleeding when questioned about the injury.

[¶ 10] Four members of the Cheyenne Police Department also testified for the State. These witnesses testified about the general layout of the appellant's house and the stairwell down which the appellant said MR fell. One witness also presented the jury with pictures of possible blood or vomit stains upstairs but noted that there was no such forensic evidence at the bottom of the stairwell.[4] They further testified regarding the appellant's and MR's mother's demeanor at the hospital and during subsequent police interviews, claiming that the appellant was unconcerned and playing card games while MR's mother looked variously sad but subdued or joking and somewhat upbeat. Finally, these officers testified about a variety of allegedly inconsistent or incomplete statements given by the appellant and MR's mother, which statements included: (1) claiming to not know about MR's older scalp bruises, then later explaining that they were present when her biological father returned the child ten days earlier; (2) whether the appellant was watching television with MR or if they were in separate rooms; (3) whether the appellant heard MR walking down the stairs before he heard her fall; and (4) how the appellant initially reacted when he saw MR fall.

[¶ 11] MR's father and paternal grandmother testified that they had custody of the child in early January 2003, returned her to her mother and the appellant's home in Cheyenne on January 17, and she was in good health and had no scalp bruises before she arrived in Cheyenne. MR's father indicated, however, that MR "started vomiting, making herself sick, [and] said I don't want to go Dad, I don't want to go" when they arrived in Cheyenne. The State called MR's mother to testify that the appellant had told her that if his relationship with MR did not improve they would both "have to move on with [their] lives." The State also questioned her regarding many of her previous statements to the police and MR's doctors.

[¶ 12] During closing, when asking the jury to return a guilty verdict on either the aggravated assault or child abuse charge, the State contended that the foregoing evidence proved:

What we have is the benefit of all of the circumstances, all of the direct objections, all of the expert opinions, and all of your collective life experience that tells you, beyond a reasonable doubt, that *[MR] did not fall down the stairs, and that the blow to her head that almost killed her was inflicted by Derek Dunsmore.*

(Emphasis added.) The State went on to argue that the injury to MR was the result of "nonaccidental trauma" and the reason that the appellant struck MR was that "[h]e was tired and frustrated with the new parent thing and the challenge of dealing with someone else's daughter."

[¶ 13] After two days of testimony, the State rested and the appellant presented his case. The appellant argued that MR's father returned her on January 17 with extensive bruising to her scalp, which caused her to be lethargic and irritable between the 17th and 27th. He claims that these symptoms arose because MR had been struck while in her father's care and she suffered a subdural hematoma at that time. Then, on the morning of January 27, 2003, while walking down the stairs to look at the puppies, a feat she had accomplished unassisted before, she suffered a seizure which forced her to stiffen and fall down the stairs, hitting her head on

---

4. It appears the appellant has always maintained that after MR fell down the stairs he carried her upstairs before dialing 911 and it was not until MR was upstairs that she began to vomit.

the thinly carpeted cement of the basement and resulting in a "rebleed" of the original hematoma. On cross-examination by the appellant, the State's experts also admitted that it was possible to suffer MR's injuries from a fall down the stairs, though it was very unlikely.

[¶ 14] Based on the foregoing evidence, the appellant now argues that his conviction must be reversed because there was insufficient evidence to find that he recklessly inflicted MR's injuries. The State, in its brief, responds that the evidence was sufficient and the district court's reasoning from the hearing on the appellant's motion for acquittal is sufficiently persuasive that "the State finds no way to improve on the district court's findings or analysis and will rely on that decision." The district court, at the hearing on the motion for acquittal, said:

> The [appellant] contends that there was no evidence that he acted recklessly or that he inflicted injury. Reviewing the [appellant's] argument and the evidence in the light most favorable to the State, this Court disagrees.
>
> . . . .
>
> The following facts viewed in the light most favorable to the State support the jury's verdict in the finding that the [appellant] acted recklessly on January 27, 2003: An emergency call was placed by the [appellant] to the police dispatcher. The [appellant] excitedly told the dispatcher that a child, M.R., was unconscious and having seizures. He's heard frantically telling the child "You're going to be okay." The police and emergency personnel quickly responded to the call. They found the child unconscious and lying on the floor in the living room. The [appellant] explained that she had injured herself as a result of a fall down the stairway leading to the basement. It was later determined that she had a massive, subdural hematoma on the left side of her brain. M.R. was taken to the hospital where emergency cranial surgery was performed to remove the hematoma.
>
> Expert witnesses called by the State testified that it is extremely rare for a subdural hematoma to occur as a result of a fall down the stairway. This is because the fall does not produce the velocity needed to produce such an injury. Experts testified this injury occurred as a result of blunt force trauma. An expert on child abuse testified that parents who inflict physical injury on children routinely claim that the injuries came about as a result of an accident or fall.
>
> The evidence also established that the [appellant] was home alone with the child on January 27, 2003; that he and the child were still bonding, but the child was not responding well to him. A few days shortly before this incident, the [appellant] had told the mother that if the relationship didn't improve by the first of March, he was going to move out of the home. A few days before January 27, 2003, the child complained of her head hurting and old bruises were found when the child was at the hospital.
>
> The testimony also established that the child had been ill the proceeding day and was vomiting and was irritable. The [appellant] had recently had surgery on his left arm and was recuperating at home from the surgery. He had stated he did not want to be with the child while she watched videos and got a television for her to watch the videos alone in her room. Finally, the [appellant] told Officer Brown that her injury was his fault.
>
> . . . .
>
> *The jury obviously rejected the [appellant's] testimony regarding the accidental fall. The exact manner in which the child received the blunt force trauma to her head was not established by the State and it is not required to do so. The jury could reasonably infer that the [appellant] became irritated at a crying, vomiting child who did not relate well to him. It could have reasonably inferred that the [appellant] was irritable as the result of the pain in his arm that was recently operated upon. That as a result of a triggering incident, the [appellant] struck the child on the left side of her head with his healthy right arm, resulting in a subdural hematoma. The frantic nature of his call, coupled with his*

*pleading assurances to the child that she was going to be all right, could indicate—or indicated that he didn't mean the blow to be as hard as it was.*

(Emphasis added.)

[¶ 15] When read in light of the jury's special verdict, the district court's reasoning is facially flawed. The jury specifically found that the appellant had not intentionally injured MR, therefore, they clearly did not unanimously believe beyond a reasonable doubt that the appellant intentionally struck the child. Further, based on our review of the trial transcript, there is no evidence from which to draw the inference that the appellant was irritated because of his recent surgery, therefore, it is not reasonable to further infer that the appellant lashed out at MR due to his irritability.

[¶ 16] Perhaps realizing that the district court's reasoning was unsupported by the verdict, the State at oral argument conceded that the jury had rejected its theory at trial, but argued that the appellant was still guilty of recklessly inflicting injury on MR under the child abuse statute because he left MR to check on the dogs and, when he heard MR at the top of the stairs, he "stayed with the puppies instead of checking on her," even though he knew he had left the door open. This argument is a marked change from the position taken by the State in its brief and was raised for the first time in appellate oral argument. Though not supported by supplementary briefing or citation to pertinent authority, we agree with the State's position insofar as it concedes that the record—in light of the jury's verdict—does not support any theory of the case at trial except that espoused by the appellant. The issue, therefore, is whether the appellant recklessly inflicted physical injury upon MR when he left the basement door open and allowed MR to come down the stairs unsupervised.

[¶ 17] "Recklessly," as used in the Wyoming Criminal Code,

is defined as the following conduct: A person acts recklessly when he consciously disregards a substantial and unjustifiable risk that the harm he is accused of causing will occur, and the harm results. The risk shall be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation[.]

Wyo. Stat. Ann. § 6–1–104(a)(ix) (LexisNexis 2003 & Supp.2004). When discussing other crimes in which acting recklessly is a criminal element, we have stressed that a person acts recklessly only if he "consciously disregards" a substantial risk *and* such disregard grossly deviates from the conduct that a reasonable person would observe. *See Olson v. State*, 960 P.2d 1019, 1021 (Wyo.1998); *Vigil v. State*, 859 P.2d 659, 664 (Wyo.1993); and *Murray v. State*, 855 P.2d 350, 357 (Wyo. 1993).

[¶ 18] The State's evidence tending to show that the appellant acted recklessly by leaving the door open and failing to check on MR when she was at the top of the stairs is sorely lacking. The only evidence presented at trial that is remotely probative on the issue of whether descending the stairs unassisted posed a danger to MR indicated that she had successfully accomplished this feat before and, therefore, it would not be considered a dangerous situation by the appellant. A police detective testified that the appellant told him that he thought MR "was probably preparing to ... sit down on her butt and slide down, which was her way of doing things" just before she fell. While juries are free to weigh the credibility of testimony, absent this evidence the record is silent on the issue of whether the appellant consciously disregarded a substantial and unjustifiable risk to MR. Further, it is clear that the appellant's version of his conduct, which description was conceded as true by the State during oral argument, does not constitute the sort of gross deviation from what a reasonable person would observe under the circumstances that we have previously recognized in our cases. *See Orona-Rangal*, ¶¶ 17–19, 53 P.3d at 1086–87 (finding that the evidence was sufficient to support a conviction for reckless endangerment where a defendant engaged in a high-speed chase, ran a red light, and crashed into and killed one motorist and injured two others); *Hodges*, 904 P.2d at 344, (finding evidence sufficient to support a reckless endangering conviction where the

defendant, driving a truck, created a dangerous situation by intentionally maneuvering in front of a cyclist, obstructing his view and only avoiding a collision because the victim was an expert cyclist); and *Murray,* 855 P.2d at 356–57 (finding that evidence was sufficient to establish reckless conduct in an involuntary manslaughter trial where a defendant fired a gun in the direction of the victim and one of the bullets ricocheted off a rock and severed the victim's femoral artery and vein). While our previous cases do not illuminate the minimum standard of care that must be breached in order to find a defendant guilty of a crime involving reckless behavior, they do demonstrate the level of conduct that we have previously found to deviate grossly from the standard of care of a reasonable person and provide a stark contrast to the appellant's description of his conduct in the instant case.

[¶ 19] Further, the child abuse statute, Wyo. Stat. Ann. § 6–2–503, references a definition of "physical injury" contained in title 14 of our statutes. That definitional statute states, in pertinent part:

> (ii) "Abuse" means inflicting or causing physical or mental injury, harm or imminent danger to the physical or mental health or welfare of a child *other than by accidental means,* including abandonment, . . . excessive or unreasonable corporal punishment, malnutrition or substantial risk thereof by reason of intentional or unintentional neglect, and the commission or allowing the commission of a sexual offense against a child as defined by law:
>
> . . . .
>
> (B) "Physical injury" means any harm to a child including but not limited to disfigurement, impairment of any bodily organ, skin bruising if greater in magnitude than minor bruising associated with reasonable corporal punishment, bleeding, burns, fracture of any bone, subdural hematoma or substantial malnutrition[.]

Wyo. Stat. Ann. § 14–3–202(a)(ii) (LexisNexis 2003). Though the definition of "abuse" is not specifically referenced by the criminal child abuse statute, we have previously recognized its utility in determining whether a child has been criminally abused. In *Goldade v. State,* 674 P.2d 721, 725 (Wyo.1983), we said that the title 14 definition "ascribe[s] importance in ascertaining whether a child has been a victim of abuse to discovering whether the injuries sustained by the child were accidental or deliberate." According to this definition, then, an individual responsible for a child's welfare does not abuse that child if the child suffers a physical injury by accidental means.

[¶ 20] While there is a strong preference in the law for the validity of jury verdicts, the verdict in the instant case cannot stand. Under the specific circumstances of this case, we hold that it was neither reasonable nor rational for the jury to return a guilty verdict on the charge of child abuse with the finding that the appellant acted recklessly in causing injury to MR. The State admits that the jury determined that the appellant merely left the basement door open and heard MR at the top of the stairs, preparing to descend them. The appellant's failure to check on the child at that point simply does not rise to the level of criminal recklessness envisioned by the child abuse statute. The facts conceded by the State in the instant case amount only to a tragic accident and our statutes are clear that a criminal conviction for child abuse cannot be predicated upon an accidental injury.

[¶ 21] The judgment and sentence of the district court is reversed and we remand with instructions to enter a judgment of acquittal.